The opinion of the court was delivered by
Rosees, J.
The actions are brought to recover a premium of insurance, on $15,000 specie, insured by J. C. & W. H. Smith, in the Caledonia, owned, two-thirds by J. C. & W. H. Smith, and one-third by Henry Toland, at and from Philadelphia to Canton, and on goods back. The specie was insured as the property of J. C. & W. H. Smith, but the plaintiff alleges that it was held in partnership with Weir, Lewis ’& Co., or that Weir, Lewis & Co. were the exclusive owners; and that, in either case, they are entitled to recover in one of the two actions brought. The suits were tiled at Nisi Prius, and, by agreement, a verdict was taken for the plaintiff, subject to the opinion of the Court in bank, upon the evidence, as to the right of the plaintiff, and the amount. It becomes necessary under this agreement, to ascertain, in the first place, the relation of the respective firms as to this shipment. After an examination of the documentary and parol evidence, we have come to the conclusion, that the specie and the homeward cargo were the property of Weir, Lewis & Co., and that the use of it only belonged to J. C. & W. H. Smith. By the contract, the latter firm were entitled to all the profits made by the adventure, and they were also bound to sustain all the loss which might arise from it. There is some obscurity attending this transaction, arising from the difficulty in showing the exact nature of the contract between these respective firms. It is a matter resting between themselves, of which the plaintiff is necessarily ignorant; and wé can only judge of the agreement from the documents which they may furnish, and the parol testimony which they have adduced. From these it would appear, that it was the intention of the contracting parties, that Weir, Lewis & Co. should hold the specie, and its proceeds at Canton, not as a pledge for the security of money advanced, as has been contended, but in absolute property. What may have induced this arrangement, we do not know with any certainty, but it may have been intended as a safe-guard against any loss or inconvenience which might arise from the insolvency of the Smiths ; to *525 secure their right to the specie, and homeward cargo in that event; or in case of loss, that the right.might not admit of question, leaving the profits of the voyage, if any, to the general creditors. This, at any rate, would be a prudential course, and such as cautious persons might be likely to pursue. In the receipt book of Weir, Lewis & Co., the property in the specie is distinctly asserted to be in them, by both parties. “ Charge adventure to Canton, per Caledonia, in Co with J. C. & W. H. Smith, with our note of the 23d inst. six months, $15,000, to be for account of J. C. & W. H. Smith, the the profit and *loss to be for J. C. & W. H. Smith. Approved. J. C. & W. H. Smith.” Had the evidence rested here, the intention of the parties would have been clear; and in case of loss, Weir, Lewis & Co. would have had a right of action on the policy, against the underwriters. Nor is there any thing in the other evidence, inconsistent with this view of it. Lewis, Weir & Co. gave their notes, dated the 23d and 24th of May, 1827, for $15,000, to the Smiths, which they had discounted at the Bank of the United States, and with the proceeds, procured specie, and handed over the specie to Weir, Lewis & Co. The specie was shipped in the Caledonia, in their joint names. Weir & Co. took the bill of lading, and the Smiths insured the $15,000 in the Pennsylvania Insurance Co. It was part of the contract that the latter firm should bear all the expenses, and have the property as between themselves, for the purpose of effecting the insurance. This, so far from being inconsistent, would rather seem to add weight to the testimony derived from the entry in the receipt book to which I have adverted. From the testimony, I infer that the specie was placed in the custody of Weir, Lewis & Co., and that it remained -under their control until it was shipped by them in the Caledonia; a natural arrangement, on the supposition that the specie was their property and which tallies with the words of the contract, signed and approved by both firms at the time the agreement was made. It is, indeed, difficult to explain the course the business took, except on the ground that the specie and the homeward cargo, so far as respects this shipment, was their property. It is said, that it is noticed as a joint adventure in several of the entries, that it is so treated in the entry on the manifest, and in the letters from Weir, Lewis and Co. to Wm. A. Smith, their agent in Canton, and in his reply to them: from this the plaintiff contends, that it is a limited partnership,- as to this shipment. In one sense, it may be so ; as the Smiths had an interest in the capital which was procured for their use, and which so far was subject to their control. By the agreement, they were entitled to all profits of the adventure, and at the same time were responsible for any *526 losses. For this reason, it may with propriety be entered in the receipt - book, to be for account of J. C. & W. H. Smith, and as an adventure in company with J. C. & W. II. Smith. This phraseology, as we are induced to believe, was adopted for the purpose of showing the interest in the money which had been advanced on their account, and for their use. The various papers and letters show the extent of that interest, as also the interest of the other firm. J. G. & W. H. Smith, were to have the use of the capital sum, which they were to invest in a return cargo, the profits of which were to belong to them, but the right of the property in the specie and its proceeds, was to remain in the other firm: in this respect resembling a chattel, where the use is in one person and the property in another.
*But, it is said, that the parties have held themselves out as partners, and that whatever may be the real nature of the transaction, as between themselves, they shall not be permitted to deny the partnership, so as to avoid responsibility to third persons. It is said, that if a person will lend his name as a partner, he becomes, as against all the rest of the world, a partner ; not upon the grounds of the real transaction between them, but upon principles of general policy, to prevent the frauds to which creditors would be liable, if they were to suppose they lent their money upon the apparent credit of three or four persons, when in fact they lent it only to two of them, to whom, without the others, they would have lent nothing. And this is true; but the circumstances of this case repel any presumption, that the underwriters were, or could be induced to enter into this contract by the fact of any entries which were afterwards made, either in the receipt book, or in the manifest. The reason, therefore, on which the rule is founded, does not apply to the case, and hence, we think, there is no weight in the position assumed by the plaintiff’s counsel.
From the view which we have taken of this contract, it results, that as to the insurance of the specie, J. C. & W. H. Smith stand in the relation of agents to Weir, Lewis & Co. There is no express proof, it is true, of the agency, nor can the plaintiff be expected to furnish such proof, yet this is a reasonable inference from all the testimony. We hold it to be immaterial, that the policy was effected and the purchase of the specie made, at different days, for it is very plain, it was all one transaction, the result of an agreement between these firms, and by no means’out of the ordinary course of business. The parties to the contract, are J. C. & W. H. Smith, who execute the policy, as well in their own names, as for and in the name or names of all and every other person or persons to whom the property insured doth, may, or shall appertain, in part or in the whole. There *527 are different forms of expression used in different countries, but whatever may be the form, where the assured is so described, any person may be comprehended, and may avail himself of the contract, by proving his interest, and showing that the policy was intended for him. In England, insurance appears to be made most frequently in the name of a broker, who causes himself to be insured on an interest, as well in his own name, as in the name and names of all persons whatsoever, to whom the same may in any way appertain. The same form is often used in the United States, and also one of a like import, in which the party effecting the policy is insured for himself, and whom it may concern. In relation to this, there is this distinction; a policy in the name of a particular person with the clause, for whom it may concern, or other equivalent words, will be enforced to protect the interest of any person in whose behalf it was intended, and by whose authority it was effected. But if the policy does not contain this general clause, no other than those *named as the assured, or on whose account it is expressed, can avail themselves of it. The policy will be applied only to the interest of the party named. Phillips on Insurance, 57, 58, 61; Dumas v. Jones, 4 Mass. Rep. 647. As Weir, Lewis & Co. were the principals, and J. C. & W. H. Smith the agents in effecting the insurance, it follows, that their interest would be protected by the policy: they would have had a right of action against the underwriters, for any loss which might arisen; and this, notwithstanding the character in which the insurance was made, did not appear in the policy. De Vignier v. Swanson, (1 Bos. & Pul. 346, in note). As, then, they had the benefit of the policy, there is no peculiar hardship in compelling them to pay the premium, on the insolvency of their agents.
The specie was insured to J. C. & W. H. Smith, in the following order:
“ Insurance $15,000 on two-thirds of the ship Caledonia, Barr, master, at and from Philadelphia to Canton, and at and from thence back to Philadelphia, with the usual liberties on such voyage. Our two-thirds of the said ship, valued at $15,000;. also $15,000 specie out, and goods home, same vessel and voyage. Premium four per cent.”
The same day, J. C. & W. H. Smith gave to the plaintiffs their promissory note, endorsed by Ilenry Toland, at fourteen months, for $1202, the amount of premium on both risks. When the note became due, twenty per cent, of its amount was paid by H. Toland, in discharge of his responsibility as endorser. The payment was made with the consent of the drawers; but why that consent was thought necessary, it *528 is difficult to imagine, as certainly the discharge of the endorsers of a note cannot affect the responsibility of the endorser. The balance of the note remains unpaid, owing to the insolvency of the drawers; and this suit is brought to recover the money from the principals, for- whose benefit the policy was effected. In an ordinary contract, it will not admit of doubt, that the principal would be liable in default of the agent: nor would the taking of a note from the agent, under the circumstances of this case, prevent a recourse to the principal. If the vendor of goods, knowing that the buyer, who deals with him in his own name; is in truth the agent of another, elect to give the credit to the agent, he cannot afterwards recover the value against the principal; but if the principal be not known at the time of the purchase, when discovered, he or the agent may be sued, at the election of the seller.' Patterson v. Grandasequi, (15 East, 62.) The law is also clearly settled, that when a debtor gives his promissory note on account of a pre-existing simple contract debt, such note does not merge or extinguish the debt due on simple contract, but the creditor, on non-payment of the note, may resort to the original cause of action, and sue upon it.* These principles are too well settled to admit of argument. *Unless, therefore, there is something in the particular contract which forbids it, the underwriters may have recourse to the principals, who, as well as the agents who effect the insurance, are liable for the premium. But, it is contended, that as the underwriters acknowledge the receipt of the premium, and took a premium note with an endorser, they cannot sustain a suit against the principal: that it amounts to an election to give credit to the agent, according to the principles of the case of Patterson v. Gandesequi, (15 East, 62). In England, the business of negotiating insurance with the underwriters, and of getting policies effected, is usually transacted by brokers, who make this branch of business their profession. There is usually an open account between each broker and every underwriter with whom he has much dealing, and in which the broker makes himself debtor to the underwriter' for all premiums, and takes credit for all losses to which the underwriter is liable, and which the broker is authorized to receive. It is generally understood, that by the usage of London, the underwriters give credit only to the broker for their premium, and can resort only to him for payment; and that he alone, and not the underwriters, can recover the premium from the insured. This peculiar course of business has not been adopted in this country. The decisions, therefore, founded on this usage, do not apply. There is nothing in this state, which differs a contract of insurance from any other *529 contract; and whatever convenience might attend the practice, it is sufficient to observe, that such has not been the rule here. The question is, does the law imply a promise to pay ? On this point, the counsel for the defendants rely principally on the case of The Patapsco Insurance Co. v. Smith, (6 Harris & Johnson, 166). We have already said, that talcing the premium note, will not, per se, extinguish the original contract; nor will, it is conceived, the acknowledgment of the receipt of the premium on the policy, have that effect. The underwriters will not, it is true, be permitted to deny their acknowledgment, as against third persons, but I cannot perceive what effect it should have, between the parties to the policy. In fact, the premium has not been paid, although there is a formal' acknowledgment of it. It was, as perhaps both parties supposed, secured to be paid; but this, of itself, will not prevent 'the underwriters from maintaining a suit against the principal, on the original contract. The Patapsco Insurance Co. v. Smith was this. The party applied expressly for himself and others. The others were not named, nor did the ■underwriters require that they should be named, but took the . note of the applicants, with an endorser. Under these circumstances the Court decided, that as they were apprised of the fact, expressly, that others were concerned, and did not ask them to be named, and made parties to the contract, they elected to look to the party who executed the note, and not to the other defendants, for payment. The material circumstance was, that there was no concealment on *tke part of the assured, but the underwriters were apprised that others had an interest, whom they did not choose to have named, and made parties. that important particular, the cases differ. Here, although, from the form of the policy, the underwriters knew that there might be others, who, from their interest, might avail themselves of the policy, yet they were not informed, that there were others who were concerned. It is in proof, that they were ignorant of that fact. The underwriter had a right to consider the persons who effected the insurance, as standing in the relation in which they represented themselves.' It was not their duty to inquire whether they were principals or agents, or whether any other person was interested in the insurance. It cannot now be an objection to the liability of the principals, that the company put faith in the representations of their own agents. If the underwriters had been, aware of the real situation of the parties, it is very possible that they might not have deemed the note of the agents a sufficient security for the payment of the premium. At any rate, to avoid the responsibility of the principals, it was necessary to inform the underwriters, as in the cases cited, expressly, that others were interested in the insurance. Although the under *530 writers may have known that others might be concerned, yet it was not incumbent on them to inquire into the fact, whether the assured had truly represented the character in which they stood. There can be no question, that the assured héld themselves out to the underwriters as principals, and owners of Jhe specie, whereas, according to our view of the facts, they were agents for another firm, the ownership of the specie being vested in them. If the company had been informed that others were interested, and did not think proper to inquire further, it would be an election, (according to the case cited,) to look only to the responsibility of the immediate contracting parties. And in this respect, there is no difference between a policy of insurance, and any other contract made by an agent.
Next as to the amount. We are of opinion, that the twenty per cent, paid by H. Toland, should be credited on the whole contract; of course, that the defendants are entitled to a credit of ten per cent, in this suit. A debtor may control at will the application of his payments, and if he omits to make this application, the power devolves on the creditor. If the payments have been applied by neither the creditor nor the debtor, they ought to be applied in the manner most advantageous to the debtor, because the presumption is that such was his intention. If neither party avails himself of his power, in consequence of which it devolves on the Court, an equitable application should be made. These principles cannot be controverted. But where an application has been once made, by either debtor or creditor, that election cannot be changed at the arbitrary will of one, without the consent of the other. Here the creditor made a general appropriation of the money paid, to the * entire contract; and by this we think both parties are bound. Judgment must be entered for the plaintiffs in the suit against Weir, Lewis & Co., and for the defendants in the other suits.
Judgment accordingly.
Cited by Counsel, 4 Wharton, 71.

 See 5 Wharton, 109.