# MASON *vs.* JONES.

1. It is of right, and not favor, for the defendant to file his answer before the decree *nisi* is made absolute.
2. A defendant in contempt in a cause against himself and others may file his answer in another cause against himself individually, though both suits relate to the same matter.
3. An injunction against negotiating a promissory note is not violated by suing thereon, and proceeding to judgment and execution.
4. The proper order, where the defense set up to the note is fraud, is to restrain its negotiation, and permit the parties to proceed at law.
5. By praying that a bill in another cause may be made a part of the present bill, all its statements are considered as repeated, and must be answered.
6. All the facts stated in the bill, not denied by the answer, are taken as true on a motion to dissolve; on final hearing facts not admitted must be proved.
7. Denial of fraud (charged to have been committed by an agent) is not sufficient, on the information of the agent and the belief of the principal.
8. Fraud in the origin of a negotiable note is no defense against a *bona fide* holder without notice.
9. But a member of a company who discounted individually a note belonging to the company, without knowledge of any fraud in its origin, is affected by the fraud of the agent of the company.
10. Where a judgment has been confessed by an attorney through the negligence of the defendant equity will not relieve.
11. Where B filed his bill against I and others, alleging fraud in a contract, which was not answered, and M afterwards filed his bill against I for relief against a judgment at law in relation to the same matter, though the fraud cannot be tried in M's suit the injunction obtained by him will be continued until B's suit shall be tried or disposed of.
12. It seems that after judgment an endorser is considered in equity a principal, and not a surety.
13. Courts of law and of equity have concurrent jurisdiction in cases where fraud is the ground of relief, and the court which first obtains possession of the case must settle the matter conclusively.

January Term, 1848,

MOTION to dissolve an injunction.

In the Spring of 1839, Abraham Barnes purchased 125,000 cuttings of the *morces multicaulis* of J. F. Callan, agent of the Washington City Silk Company; and gave his negotiable notes, with M. Clarke and Jno. Mason, as sureties for the price of the same. The aggregate of the notes was $5,000,

payable, it was believed, by Barnes in two payments of $2,500 each, on the 15th of October and November, 1839. Callen was represented, when the purchase was made, to have warranted that the cuttings would vegetate and grow, if certain instructions were followed. Barnes did not examine them until they were delivered when he was struck with the dry appearance of the cuttings; notwithstanding, he set them out, following the instructions; but all of them, except about 2,700, did not vegetate, and at the time of the sale were dead and worthless. Upon discovering this, Barnes, on June 19, 1839, filed his bill, stating as above, and charging that the said contract was made by Callan, as the agent, and with the knowledge of the members of the company, and that he knew the worthless condition of said cuttings, and fraudulently misrepresented the quality and condition thereof; and his said notes being negotiable, he sought an injunction against the same being negotiated or sued on, and an abatement, to the extent of the partial failure of the consideration. The members of the company were Dr. Jones, Pierce, Hall, Callan and a number of other persons, who were made defendants. It was charged that the notes were then held by said Callan, or some member of said company, and by no one who had paid a valuable consideration therefor, without notice.

An injunction was granted " against negotiating or passing away said notes," which was returned served on all the defendants. The defendants did not appear to this suit nor answer said bill. On February 10, 1841, a writ was issued in the name of said Jones against the complainant, Mason, on a note dated April 15, 1839, made by said Barnes to said Mason or order, indorsed by him and M. Clarke, payable on October 15th following, for $1,250. Mason was arrested and special bail was put in. Mr. Marbury found his appearance entered; but having received no instructions, and never having seen Mason, he entered judgment at March term, 1842. A *ca. sa.* was issued and Mason was taken in custody.

On January 13, 1843, Mason filed his bill setting out the purchase of the cuttings by Barnes, of Callan, as the agent of the company, and of one Kinsman, of Philadelphia, the warranty, and worthlessness of the cuttings as above stated; the giving of notes for the price, and the injunction granted at the instance of Barnes as aforesaid, the suit by Jones upon "one of said notes," given for said cuttings; that he had been sued by Kinsman upon "three of said notes," and had employed Brent & Brent, who were his attorneys, and to whom he had explained the transaction, and requested them to attend to any suits on said notes; that he attended to Kinsman's in person and employed those gentlemen; but being unable to do so when sued by Jones, he requested a friend to enter bail, and to employ counsel, who, by mistake, entered Mr. Marbury's name, instead of Brent & Brent; that he often spoke to them afterwards of his cases, but without naming this of Jones', as the defense was the same as Kinsman's, who became non-suit; that his friend did not inform him of the entry of Mr. Marbury's name; and the first he knew of it, and of said judgment, was upon examining the docket after being taken in execution; that the said note for $1,250 was one of those given for said cuttings and enjoined as assigned, which, and the total failure of the consideration, were known to said Jones at the time the note was delivered to him, if he did not then hold the same for himself and the other members of said company; all of whom were charged to be parties to said fraud. The bill further stated that Barnes resided in Washington County, Maryland, and that the demand of the said note was made in the city of Washington. The note was dated, but not made payable there. The bill and injunction of Barnes was referred to as a part of this bill. Jones was required, among other things, to answer what office he held in said company, and what sum he gave for said note, in what paid, and to whom. The prayer was that the judgment might be opened, or relief granted here

by perpetual injunction and cancellation of the said note. The injunction was returned served on Jones. He did not appear or answer. On June 24, 1845, a perpetual injunction was decreed *nisi*, which was served on July 1st; and on October 24, 1845, before the decree became absolute, Dr. Jones' answer to Mason's bill was brought into court and offered to be filed. Objection being made by the complainant the matter stood over, and was heard at October term, 1847, when May, for complainant, objected to the reception of the answer, because Jones was in contempt by having violated the injunction granted in Barnes' Case against him and others by suing upon one of the notes. Har. Ch. Pr., 222, 263; Williamson *vs.* Carnon, 1 Gill & J., 211, 213.

BRADLEY, *contra*, contended that it was the defendant's right to file his answer before decree *nisi* becomes absolute, and that the contempt, if there were any, was in another cause. 1 Smith's Ch. Pr., 61, note *a;* Alkroyd *vs.* Klug, 8 Paige.

CRANCH, *C. J.* The passage in Har., 222, only shows what acts will be a violation of an injunction, and not that a party in contempt in one cause may not file his answer in another. Har., 263, means that the injunction will not be dissolved until the defendant's contempt *in the same cause* are cleared. In 1 G. & J., 211, the contempt was in the same cause, and had no relation to the filing of the answer. While the defendant is in arrest under attachment for contempt in violating an injunction, a motion will not be heard to dissolve it. There are many cases in which a party who has committed a contempt in the same cause may sustain a motion; as a plaintiff, in contempt for non-payment of costs, for an irregular. motion, can enforce an answer; and it is only where a *favor* is applied for that such an obligation is available. A party cannot be said to be in contempt until attached. But the injunction which the defendant is charged with violating was not granted in this cause, but in that of Barnes, Jones and others, and the defendant

is not guilty of a contempt in this cause by being guilty of one in another cause. Under the sixth rule it was the right of the defendant to file his answer before the decree *nisi* became absolute. The answer was ordered to be filed.

It admits the formation of the company, and that Callan was their agent; that he made a contract with Barnes for the cuttings, but it is denied that he warranted, as the agent of the company, that the cuttings should vegetate and grow if certain instructions were followed; that Barnes gave four notes for said cuttings, but defendant was ignorant of these transactions, and was not consulted, nor did he hear of them until afterwards and after he had become the *bona fide* holder of the note upon which suit was brought. Defendant denies, on the information of Callan, positively, that any fraud was done or designed by him in the sale of said cuttings. He believes on the information of others, that some of the cuttings grew, and that there was great neglect on the part of Barnes, and that he did not follow the instructions. It is admitted that the notes were given for the benefit of the company as a company. Barnes' injunction is admitted, but long before, and within a few days after the date of the note mentioned in said bill, namely, on April 18, 1839, the defendant received the same *bona fide* and in the regular course of dealing and business, and gave full value therefor, without any knowledge of any facts, and without having heard from any person a single word to cast suspicion upon said notes, and without any knowledge or information of the consideration for which they had been given; that he received the said note from said Callan, as the property of the company, but as any other person would have done, relying on the credit of the endorsers more than of the maker. Defendant did not recollect the service of the injunction, and believes it was not served; but it would have been no prohibition against his proceeding to recover a debt due to him individually on a *bona fide* transaction, for full consideration, long before·

the issuing of the injunction. He admits obtaining judgment, but was ignorant of the progress of the cause, and denies that the facts, if true, could give the court jurisdiction. The defendant denies all fraud and combination, &c.

At the present term a motion was made to dissolve the injunction in Mason's Case.

Redin and Bradley, in support of the motion, contended that this was not a case for the interference of a court of equity.

I. Jones was not in contempt. He obtained the note *bona fide*, before Barnes' injunction, and had a right to proceed to judgment. That injunction was against the company, collectively, and was not meant to reach him individually. Barnes' injunction bond was to the company, and would be no security to Jones, as the individual holder of the note. The notes mentioned in Barnes' bill are not the same as those in Mason's. The order for the injunction was not against suing, but negotiating merely. It was settled on the presentation of the answer, that the contempt, if one, was in another cause, and could not be urged in this. The remedy for contempt, in violating an injunction, is attachment. The judgment cannot, for that reason, be set aside.

II. But the defenses set up are defenses at law. 1. As to the fraud and warranty; they are denied; if upon the information of Callan only, the charge is merely upon the information of Barnes. Mason's bill does not aver that the company knew the cuttings were bad at the time of the sale, nor that the statements in Barnes' bill are true. What was given for the note and what office Jones held are immaterial inquiries, and cannot serve the complainant in his defences of fraud and failure of consideration. The denial of the defendant meets fully every material allegation in both bills. But, if not sufficiently denied, fraud and warranty are no defence against Jones, a *bona fide* holder of the note without notice; gaming and usury are the only

defences against an innocent third party (Ch. on Bills); fraud is not, except between the original parties (Wynn *vs.* Thornton, 12 Wheat.); and on the warranty the remedy was at law; no circumstances of fraud are stated; and, if they had been, the defence was also at law.    2. The failure of consideration is denied; but it is averred to be total, and that is also a full defence at law.    3. No advantage can be taken in equity of any illegality in the demand and notice after judgment.    There is no averment that the residence of Barnes was known to Jones.    If unknown, the note was properly demanded at the place of its date.

III. The judgment was properly obtained and cannot be stricken out.    A party is bound by a judgment confessed by his attorney of record, unless fraud or collusion with the adverse party can be shown.    He will not be relieved where it is produced by his own negligence.    In this case the complainant did not inform his bail that Brent & Brent were his attorneys, and request him to have their appearance entered; nor did he give any attention to the suit afterwards.    There is no relief under such circumstances. 36 Law Lib., 259; 2 Story, 885, 887, 889, 896; Prather *vs.* Prather, 11 Gill & J., 110; Fowler *vs.* Lee, 10 Gill & J., 358.    The understanding at the bar, as to the confessions of judgments, is that the defence must be made known at the same time, and an opportunity afforded for a trial, before the jury are discharged; else a defendant might wait till the witnesses were dead and limitations would be a bar.

MAY, *contra.*    1. It is a case of partial failure of consideration, made so by reference to Barnes' bill.    The fraud charged is denied on the information of Callan only; which is not sufficient.    Alex. Ch. Prac., 86.    The defendant was one of the company, and is charged to have known of the fraud; but, if no personal knowledge, he was answerable for the misrepresentations of Callan, the agent of the company.    He is not a *bona fide* holder of the note.    He received it as the property of the company, of which he was

one. He therefore knew the consideration, or had reason to know, and was bound to inquire. His answer is not full; he does not state what office he held in the company, nor what he gave for the note. A case of fraud is made out in Barnes' bill, which the defendant and other members of the company were bound to answer. 2. The judgment was entered by mistake. The complainant was lulled into security by the former injunction. He had no knowledge of the appearance of Mr. Marbury. He had a defence, which he had instructed his counsel, Brent & Brent, to make to all these notes. Equity can interfere. 2 Story Eq., Sec. 885, 887, 889, 896; 6 Gill & J., 309; 2 H. & Gill, 179; 9 Wheat., 532; Smith vs. McKeever, 10 Peters, 497; Brown vs. Swann, 5 How., 141; Truly vs. Warner, 7 Cr., 332; Mar. Ins. Co. vs. Hodgson, 5 How., 204; 36 Law Libr., 61. 3. Jones was under disability to sue. The injunction in Barnes' Case is not to sue. The suit brought against Mason was on the same note, and was a violation of that injunction. The defendant was in contempt, and shall take no benefit from his illegal act. There will be a restoration of the rights of the parties as they stood before the suit was brought. The remedy for breach of an injunction is not merely attachment, but the acts done will be treated as nullities. 3 Mer., 148; Partingdon vs. Booth, 6 Ves., 109; 2 Edwards Ch., 108; 1 Smith's Ch. Pra., 623; 14 Ves., 136, a case of possession restored; 5 Munf., 187; 2 Har. C. Pr., 222; Alexander, 86, 88, 92; 16 Ves., 144; 17 Ves., 385; 2 Anst., 556; 3 Atk., 567; 18 Ves., 487; 2 Sin. & Stev., 577; 3 Swanst., 626; Woodward vs. Earl of Lincoln, 9 Sin., 214; 2 Dick., 703; Robinson vs. Byron, 3 New., 294; 1 Gill & J., 212; Williamson vs. Carnan, 1 Russ. Mem., 342; 4 Cond. Eng. Ch. Cas., 344; Clarke vs. Dew, 4 Paige, 163; Hanley vs. Bennet, 2 Har. & J., 34; Bld., 353.

Mr. Justice Morsell delivered the opinion of the Court:

The first question is, whether the defendant has violated the injunction issued in Barnes' Case. The order of the

judge was merely, " not to negotiate or pass away the promissory notes," although in the prayer for the injunction itself the words, "and not sue upon the same," are interlined. The defense set up was fraud, which was available at law; and, therefore, the order properly prohibited the negotiation of the notes, and permitted the parties to proceed at law. To have restrained suits on the notes, might have involved the loss of testimony, of security, and other serious evils. 3 Bac. Ab., 651, Tit. Injunction Note; Smith *vs.* Aykwell, 3 Atk., 566, Amb., 66. The defendant did not then violate Barnes' injunction by suing and was not in contempt.

The reasons stated for the dissolution of the injunction go to the jurisdiction of the court. It is urged, first, that the circumstances of the fraud ought to be stated in the charge of fraud in the bill, not in terms only, and that none are stated; second, that the defense might have been made at law; and that it is now too late, there being no clear evidence of fraud or accident or the act of the opposite party unmixed with any negligence or fault on the part of the complainant; third, that the answer denies the fraud as to complainant and Callan. Barnes' bill is prayed to be made a part of this, and all its statements must be considered as repeated. Taking both together, the facts and circumstances of the fraud and the fraud itself are positively charged to have been practiced on the part of Callan and the defendant, as one of the members of the company. Then, what effect is to be given to the defendant's answer? It is objected that it does not fully respond to the charges in the bill; and that those which are not answered are to be taken as true. In 5 Cr., 51, the rule is stated to be, that " if the answer neither admits nor denies the allegations of the bill, they must be proved on the final hearing, but upon a question of dissolution of an injunction, they are to be taken to be true." The parts alleged not to be answered are, what office the defendant held; whether the

7DC—17

proceeds of the note were for the use of himself and the other members of the company; and what he paid for the same? The defendant has answered, that Callan was the agent of the company; that he was a member thereof and received the note without any knowledge of the consideration, *bona fide*, in the regular course of dealing, and gave full value therefor, within a few days after its date; and that he received the same from Callan as the property of the company and as any other person would have done. This appears to me to answer all the material parts of those interrogatories. It is further objected, that a case of fraud is charged, which is not fully met by the answer. Besides the general denial, the defendant, on the information of Callan, positively denies that there was any fraud in said sale. The defendant sufficiently denies it, as to himself, by showing his entire ignorance of all the circumstances. But what weight is due to his denial merely upon the *information* of Callan, and to his *belief*, without *knowing*? The charge is upon oath that *Callan*, as the *agent* of the *company*, was guilty of the fraud, which I do not think is repelled by a statement of the complainant's belief of what Callan had informed him. The principal is stated in 9 Cr., 153, and 5 Peters, 111, in the last of which cases (which was a judgment bill) the judge says: "It is to be borne in mind that the bill does not charge the agreement to have been made with the bank, but with their attorney. The denial by the bank is not therefore of any matter charged to have been *within their own knowledge;* they could therefore only speak of their belief or from information *received from their attorney* and not from their own knowledge of the transaction."

It has been contended, however, that the defendant being the holder of an endorsed, negotiable note, before maturity, for a *bona fide* and valuable consideration, and without notice, cannot be affected by the fraud. This, as a general proposition is unquestionably true. But the defendant was a member of the company, and Callan was their authorized

agent to make the contract for these cuttings; the notes were delivered to Callan, as such agent, for the benefit of the company; the note in question was delivered to the defendant a few days after its date, as the property of the company; and, therefore, the defendant must be deemed to have had notice of the acts of *Callan,* and to be affected by them as much as any other member, and as much so as if he had in fact known all the circumstances charged as fraudulent, and although he received the note under the circumstances stated.

The next question is one of more difficulty. Will a court sitting as a court of equity relieve, in a case which has been before it as a court of law, between the same parties, and where the defendant could have availed himself of his defense at law, but failed to do so, and confessed the judgment.

The general rule is, that when a party has a good defense at law, and omits to make it, he cannot afterwards, upon the same ground, have relief in equity. In 6 G. & J., 312, the court says: "A court of equity will not relieve against a recovery in a trial at law, unless the justice of the verdict can be impeached by facts, or on grounds of which the party seeking the aid of chancery could not have availed himself at law; or was prevented from doing it, by *fraud* or accident, or the act of the opposite party, *unmixed with* any negligence or fault on his own part;" and the principle is the same on a confession of judgment at law. It is said that the complainant was lulled into security by Barnes' injunction; and that Mr. Marbury confessed the judgment not knowing there was any defense.

As to the injunction, the complainant was no party in that suit; the defendant was permitted to sue, and the service of the writ ought to have put the complainant on his guard; he did give personal attention to the suits brought by Kinsman on the other notes; which shows that he understood it was necessary he should do so. As to the mistake,

taking the complainant's own statement, it appears that he gave no directions to his bail, what counsel to employ, or that the bail knew Brent & Brent were his counsel, nor that he ever inquired of his bail who he had employed, or that he ever requested Brent & Brent to appear; the suit was brought in February, 1841; and stood for trial at March, 1842; he had made no preparation for trial by summoning witnesses; he must have known the regular trial term, and should have been present, and had Brent & Brent been his counsel, he must have produced his proof of the fraud; but instead of giving the proper attention to his case, which every party is bound to give, there was total indifference on his part. This is not a case of accident, unmixed with any negligence or fault; but a case of gross negligence on the part of the complainant.

But, although the court has no jurisdiction to try the question of fraud, for the reasons already stated, would it not be proper to continue the injunction, until the final decision of Barnes' Case against the same defendant and others? The trial of the validity of the same contract is involved in that suit, and although after judgment the endorser is considered as a principal, and is not entitled to the aid of a court of equity as a surety (5 How., 206; 3 Wh., 520); yet it would be unjust that the complainant should suffer, and not have the benefit of the rescission of the contract, if Barnes should succeed in his suit. That suit is still pending. Fraud is the ground of relief, of which courts of law and equity have concurrent jurisdiction, and the court which first obtains possession of the subject, must determine it conclusively, exclusive of the other. The court of chancery had first possession of the contract in connection with this note, through the Barnes' Case. The injunction must be continued, until that case has been disposed of; or, at least, until the defendant has done everything in his power to bring it to a close.