Emott, J.
I am not prepared to assent to the proposition stated by the learned judge who delivered the opinion in the court below, that the defendants are estopped by the acknowledgment in the policy, from denying the receipt of the premium. The mere possession, by the insured, of a policy con- . taining such an acknowledgmént, under such circumstances as were proved in this case, did not furnish conclusive evidence that the premium had been paid. If, indeed, the production of such a receipt for the premium should have that effect, it would dispose of the whole case, in favor of the plaintiffs, instead of presenting, as the Supreme Court held, a question to go to the jury. Ho case in the courts of this State was cited which binds us to go to such a length in respect to these instruments. In the New York Central Insurance Company v. National Protection Insurance Company (20 Barb., 475), the remark is made, that the acknowledgment in the policy, that the premium had been received, seems, upon the authorities, conclusive upon the company. But the case was decided upon the delivery of the policy by the insurers to the insured, and the waiver of prepayment of the premium. Goit v. The National Protection Insurance Company (25 Barb., 189), was a case of a clear waiver of the previous payment of the premium by the agent of the insurers, in which it was not necessary to invoke the doctrine I am questioning, although it was stated by Judge Allen, in delivering the opinion of the Court. Barnum v. Childs (1 Sand. S. C., 58), which was cited in the opinion, in the court below, presented a question of the effect of the non-payment of a nominal consideration for a sealed instrument, which was stated therein to have been “ in hand paid,” in the usual form. On the other hand, in The Insurance Company of Pennsylvania v. Smith (3 Whart., 520), the Supreme Court of Pennsylvania held that an insurance policy did not differ from any other contract in this respect, and that a receipt which it contained might be inquired into and contra-dieted. Chancellor Kent, it is true, states the rule in very broad terms, in his Commentaries (vol. 3, 260), but he is treating of marine insurances, and while citing several English cases *455 of that description, to the rule, he does not allude to the difference in the manner of transacting the business of insurance against fire, and that against marine perils, especially in England. Insurances on vessels are often, if not ordinarily, effected by brokers, for and on account of the owners; and these brokers have accounts and a course of dealing, both with the underwriters and with the assured. In Dalgell v. Moir, (1 Campb.,. 532), the defendant had underwritten a policy effected by one Eeid, a broker, on account of the plaintiff. The plaintiff received the policy, thus underwritten, in payment of a debt due him from Eeid, and without advancing any money for it. Eeid had a running account with the defendant, and had not paid him any of the premium. The action was for a return of the premium. Lord Ellenbobough said at the trial: “If a man acknowledges that he has received a sum of money from a broker, referring to the receipt in the policy, and accredits him with his principal, to that amount, he shall not afterwards, as between himself and the principal, be .allowed to say that the broker never paid him.” That rests upon the law of principal and agent and the effect of the dealings with the agent. Fry v. Bell (3 Taunt., 493), and Mavor v. Simeon (id., 497), were also cases growing out of transactions with brokers. The latter case was compromised and not decided, but the former was taken out of the general rule, by fraud perpetrated or attempted by the insured through the broker upon the insurers. De Gaminde v. Pigon (4 Taunt., 246), was a case which shows the special circumstances upon which the rule is founded, and to which it is applicable. That was an action on a marine policy for a- loss on one vessel, and for return premium on another. The plaintiff, who lived at Alicante, was not known to the defendant as being concerned in the insurance, which was effected by the plaintiff’s factors in London. They obtained the insurance of one Wagstaff, an insurance broker, who debited the plaintiff’s correspondents in account, and they in like manner debited him. Wagstaff then credited the defendant in his accounts, but no money had passed between any of these parties, and both plaintiffs, Lon *456 don agents, and Wagstaff had failed. The court held that as between the plaintiff and defendant, the premium was paid, and the defendant must look to the broker, Wagstaff. Heath, J., said: “When the assured is admitted to have paid the premiums, it is, as between the assured and the underwriters, actually paid. The admission of the receipt of the premium is an admission that it shall be allowed by the underwriter in account, and how that account stands between these parties we do not know, for it is not stated in this case, but it must be allowed in account by the broker to the underwriter.” It will be seen that all these cases turn on a different principle from that which they are sometimes invoked to sustain. When the contract is made by the insured, in his own name, directly with the underwriters or insurance company, through their agent or officer, I am unable to see why an acknowledgment of the receipt of the premian contained in the policy or contract of insurance is governed by any different rule from other receipts. If the insurance, company have been credited with it in account by their agent, or if it has, in fact, been paid.to him, no doubt it is a sufficient payment to them. In any case the delivery and possession of a policy containing a receipt for the premium affords evidence of its payment, or of a waiver of its prepayment, but it is not conclusive, nor does it operate as an estoppel either in favor or against the insurers.
[The learned judge, after stating the evidence and the conclusion of the judge at circuit, that it did not establish a waiver of the condition annexed to the policy for. the payment of the premium before any liability should attach, nor show that any credit had been given therefor, proceeded:]
If the judge was wrong in this conclusion, if the evidence led necessarily to an opposite result, or if there was a question of fact to be determined, the nonsuit was erroneous and was properly set aside upon the exception to it by the general term. The case states that the defendants insisted, .that a valid contract of insurance was proven, and that the defendants were shown to have waived the payment of the premium, and to have given credit for its amount to Godfrey. The defend *457 ants’ counsel contends that if the plaintiffs wished to dispute the facts alleged by the defendants, and assumed by the court upon the-motion for a nonsuit, they should not only have resisted the motion, and excepted to its being granted, but should in addition have expressly requested to have the question whether such were the facts submitted to the jury. 1 do not so understand the rule or the cases. Barnes v, Perine (2 Kern., 18), which is supposed to contain such a rule, will be found to be a case in which there was evidently no dispute about facts, and granting a nonsuit, or giving judgment for the plaintiff, would necessarily be the result of a decision one way or the other upon the question of law presented. It is the. duty of a court to nonsuit whenever the facts of a case are undisputed, and the law arising upon them is adverse to the plaintiff, and also when, although there may be a disputed question of fact in the case, its determination in favor of the plaintiff would nevertheless not entitle him to recover. When a nonsuit is granted an exception to that ruling brings up the question whether the nonsuit was correctly granted upon either ground,“and the nonsuit must be set aside upon such an exception, both when the plaintiff is entitled to judgment as matter of law upon the close of his case, and when he would be entitled to judgment if the jury should find in his favor upon any disputed issue of fact, as to which there is evidence for their consideration.
There can be no dispute that Lewis could waive the actual prepayment of the premium. He was a general agent of this company, and whatever may have been his secret instructions, the insurer had a right to rely upon his act. His principals were bound as well by a waiver on his part of the condition of prepayment of the premium, as by his contracts of insurance. Lewis’s letter was a proposal to Godfrey, to make the insurance by the delivery and retention of the policy. It involved a waiver of the prepayment of the premium, and some credit for it more or less. If his proposition was accepted, the insurance became effected at once, and the premium was to be paid afterwards. The terms of his proposal were that if the *458 insurance was declined, the policy was to be returned by the next mail. If not so returned it was accepted, and then Godfrey was requested to send or pay the premium. This however is not required by the next mail, or with the same promptness as is demanded in his answer to the proposal for insurance. It will be found in the evidence of Godfrey that he testified that when'he first applied at Lewis’s office in his absence, and offered to pay the premium, he was told by Snow that he could pay for it the next time he came to Borne, or if they wanted it sooner they would send for it. Lewis testified that he had occasionally issued policies without demanding the premium, or sent them as he did this one. There was nothing in the conduct of Lewis to indicate that he did not suppose after Godfrey retained the policy, that the contract of insurance was made, and the premium due whenever he chose to call for it. If the company had sued Godfrey for the premium, his retention of the policy would have been strong and probably conclusive evidence of his acceptance of the proposal of their agent, and neither the receipt contained in the policy, nor his omission to reply to the letter of Lewis would have prevented their recovery. My conclusion upon the whole” transaction is that there was a full waiver 'of the previous payment of the insurance premium by the defendant’s- agent, and -that there was needed only the acceptance or consent of the party desiring insurance to make the contract of insurance complete. The evidence which has- been adverted to, if not conclusive to show such a consent or acceptance, at all events was sufficient to carry that question to the jury. My own opinion is that the proof of Godfrey’s acceptance of Lewis’s proposal was conclusive. But- either way the nonsuit granted at the trial was wrong. The order setting it aside should be affirmed, with costs, and the plaintiff must have judgment under the stipulation.
Denio, Ch. J., and Balcom, J., thought the nonsuit was properly granted: that Lewis called upon Godfrey to send the policy by return mail or remit the premium; this was a mere *459 proposal to insure, which he did not accept. Martin, J., expressed no opinion.
Judgment affirmed, judgment absolute for the plain-. . - tiff, and cause remitted to the Supreme Court with directions to assess damages.