## The Insurance Company of Pennsylvania *versus* The Phœnix Insurance Company.

1. An insurance company executed to Trask a marine policy on a ship, " for account of whom it may concern, loss if any, payable to assured or order;" no assignment of the policy to be valid " unless the consent of the insurers be first obtained." He mortgaged the ship to Bell, and covenanted to keep her insured, assigned the policy in blank and delivered it to Bell as collateral ; a partial loss having occurred, *Held*, that Bell was entitled to recover from the insurers in preference to a subsequently attaching creditor of Trask.

2. The transaction was an equitable transfer of the right to receive the money, not an assignment of the policy. Per HARE, P. J.

3. The relation of insurer and insured is one of confidence; a stranger cannot become a party to the agreement without the insurer's consent.   *Id.*

4. The premium note was not paid by Trask, and after the loss the insurer settled with Bell; the amount of the note being allowed to be set off, the condition against assignment which was for the insurer's benefit was thus waived.

5. No exception being taken below to a point reserved, the presumption was that it was assented to as a true statement of the facts.

6. If a judge in a reserved point, state facts without agreement, the objection must be made and exception taken at the time.

February 8th 1872.   Before AGNEW, SHARSWOOD and WILLIAMS, JJ.   THOMPSON, C. J., at Nisi Prius.

Error to the District Court of *Philadelphia :*  Of January Term 1871, No. 348.

This was a scire facias in foreign attachment, issued to December Term 1868, by The Insurance Company of the State of Pennsylvania against B. J. Trask ; The Phœnix Insurance Company being the garnishees : the attachment had been served upon them September 22d 1868.

The question in the case was, whether William Bell, mortgagee of the vessel and assignee of the policy as collateral security, was entitled to receive the amount due by the insurers in preference to the attaching creditor.   Bell appeared and took defence under the garnishees.

The plaintiff gave in evidence a policy of insurance, dated February 26th 1867, from The Phœnix Insurance Company to Benjamin J. H. Trask for $5000, " lost or not lost, at and from the 15th day of December 1865, at noon, and to continue until the 15th day of December 1867, at noon, and if then on a passage, with liberty to renew for not exceeding three months, &c., ' for account of whom it may concern, loss, if any, payable to the assured or order,' upon the ship called the Shakespeare, valued at $80,000."

The policy contained also this clause : " It is also agreed that no assignment of this policy shall be valid unless the premium has been paid or note given therefor is further secured by a previous endorsement of the person or persons for whose benefit said assign

21 P. F. SMITH—3

[Insurance Co. of Pennsylvania *v.* Phœnix Insurance Co.]

ment is intended, and unless the consent of the insurers be first obtained."

The signature of B. J. H. Trask, Jr., was on the back of the policy.

It was agreed at the trial that there was a partial loss on " The Shakespeare," and that there was due on the policy by the garnishee the sum of $1283.93, being their adjusted share of the loss.

The garnishees gave in evidence a mortgage of the " Shakespeare," dated July 8th 1867, from Trask to Bell for $40,000 ; the mortgage contained a covenant by Trask to keep the vessel insured for the benefit of the mortgagee.

Bell testified, that he had lent Trask money in 1865, 1866, and 1867, and that Trask had executed the mortgage on.the ship as security for the debt, and assigned and delivered to him the policy as collateral security for the mortgage ; that the endorsement in blank had been made to him at the same time ; he had not possession of the vessel at the time of the loss.

H. J. Moody testified : " I acted as the agent of Mr. Bell in the adjustment and collection of these insurances on the Shakespeare. Early in September 1868 I had an interview with Mr. Wucherer, the president of the Phœnix Insurance Company, in relation to the amount due by the Phœnix Company on this policy, in which interview I told Mr. Wucherer that Mr. Trask had assigned in the policy to Mr. Bell. Mr. Wucherer claimed to set off against the amount due upon the policy, the amount of another premium-note of Mr. Trask's which they held."

The following letters from Mr. Wucherer were put in evidence :

" Philadelphia, September 6th 1868.
" Messrs. Moody & Telfair, New York :

" In reply to your favor of the 15th we have to inform you that we are willing to settle the claim for loss on ship Shakespeare on the basis of $30,667.67, as adopted by the Orient & International Insurance Companies of New York, our proportion being 1-16th or $1916.67, from which is to be deducted the amount due under a judgment obtained through our attorney, William D. Booth, Esq."

" Philadelphia, September 22d 1868.
" Messrs. Moody & Telfair, &c. :

" We wrote you on the 16th instant stating our willingness to settle the claim for partial loss on the ship Shakespeare on the basis adopted by the Atlantic and other insurance companies of New York, making our proportion $1916.67, deducting therefrom the amount due under our judgment against Mr. Trask, since when we have not had the pleasure of hearing from you. We have now to inform you that we have this day been served with an attachment at the suit of the Insurance Company of the State of Pennsylvania for any funds in our hands of Benjamin J. H. Trask."

The court instructed the jury to find for the plaintiff, and reserved two points :—

1. Whether the endorsement of the policy by Trask, and his delivering it to Bell, in pursuance of the covenant to keep the ship insured for the benefit of the latter, was a good, equitable assignment of the amount, if any, that might become due under the policy to Trask, constituting an answer to the attachment subsequently laid on the garnishee.

2. Whether the agreement by the garnishee to appropriate the amount due to Bell on the policy, as assigned, to the payment of the premiums due by Trask, was a waiver of their right to rely on the non-payment of premium by Trask, as a reason why the assignment should be void.

The verdict was for the plaintiffs, finding in the hands of the garnishee $1283.93.

The court afterwards entered judgment for the garnishees on the points reserved, *non obstante veredicto :* HARE, P. J., delivering the following opinion :—

" This case arises under the following circumstances : It is an attachment issued by the plaintiffs for the amount due on a marine policy executed by the defendants in favor of Trask, the defendant in the judgment. The garnishees admitted the execution of the policy and the loss, but contended that the demand had been assigned by Trask prior to the attachment, as collateral security for a mortgage of the vessel to William Bell, who appeared and took defence under the garnishee.

" The evidence on this point was as follows : Trask mortgaged the ship to Bell by an indenture dated July 8th 1867, containing a covenant to keep the vessel insured for the benefit of the mortgagee. There was no formal or written transfer of the policy, but it was endorsed in blank by Trask and given to Bell in pursuance of the covenant. These facts were not contested by the plaintiffs at the trial ; but it was contended that the transfer was invalid, because the consent of the insurers had not been given as required by the policy, which contained the following condition : ' Provided, that no assignment of this policy shall be valid unless the premium has been paid or the note given therefor is further secured by a previous endorsement of the person or persons for whose benefit said assignment is intended, or unless the consent of the insurers be first obtained.' The question therefore is, whether there was a failure to comply with the terms of this provision invalidating the transfer of the policy to Bell.

" The assignment of a policy of insurance may be viewed in two different aspects. In one of them it passes the insurance considered as such. In the other it is a mere equitable transfer of the right to receive any sum that may be due in the event of a loss. A purchaser who buys a vessel and takes an assignment of the policy,

[Insurance Co. of Pennsylvania *v*. Phœnix Insurance Co.]

is substituted in place of the vendor. He must, it is true, sue in the name of the latter, but the recovery is in his own right, and the defendants cannot rely on the determination of the insurable interest of the nominal plaintiff as a bar. The liability of the insurers is under these circumstances for all practical purposes the same as if the insurance had been effected in the first instance by the assignee. It is a qualified negotiation of the instrument, which may be likened to the passage of a covenant of warranty with the estate to which it is made incident by the deed. Such is also the rule in the case of an insurance against fire, except that the consent of the insurers is requisite to give validity to the transfer.

" On the other hand, an assignment of the policy to a stranger in interest, can only operate as an equitable appropriation or transfer of the damages that are or may be payable for the destruction of the property by the perils for which the insurers have agreed to be answerable. The fund is assigned and not the contract, nor the right to be indemnified under it in the event of loss. The assignee stands in the shoes of the assignor without acquiring a new or independent status, and cannot recover unless the assignor has an insurable interest when the loss occurs. Such an instance is afforded by the transfer of a policy as collateral security to a creditor who has no estate or interest in the premises insured: Bibend *v*. Liverpool, 30 California 78.

" In the cases above supposed, the distinction is plainly marked and may be readily applied, but there is a third where the assignment may have a twofold operation, and it is not always easy to say which was designed. This occurs when the policy is transferred to a mortgagee of the property covered by the insurance. Here there are two insurable interests, each of which may subsist and be a ground of action, notwithstanding the determination of the other. The mortgagor is entitled to indemnity as the owner of the equity of redemption; the mortgagee, by virtue of his lien for the debt; and as the extinguishment of the mortgage will not affect the right of the mortgagor, so a sale or alienation by the mortgagor will not preclude a recovery by the mortgagee. Such at least is the case when the consent of the insurers is obtained, or is not requisite to the validity of the transfer, and there is no condition against alienation. When, however, the insurance is against fire, or contains a proviso that it shall not be assigned without the consent of the insurers, a different question may be presented. If the property is conveyed under these circumstances and the policy transferred to the purchaser without the sanction of the insurers, the insurance will be at an end, and there can be no liability under it for a subsequent loss. The assignor cannot recover, because his insurable interest has been determined by the sale; and the assignee is not a party to the contract originally, or by virtue of the assignment. When, however, the policy is assigned to a mortgagee, and not to an

[Insurance Co. of Pennsylvania *v.* Phœnix Insurance Co.]

absolute purchaser, there is this material difference, that the assignor retains an insurable interest, and may recover as if the mortgage had not been executed.   His right in this regard is a chose in action, a demand assignable in equity to any one to whom he thinks fit to transfer it; and it may consequently be transferred as a collateral security to the mortgagee.   It is immaterial that the policy does not attach to the insurable interest of the latter; he will still be entitled to the amount due for any loss that may be sustained by the mortgagor.   The assignee contends that this view should be taken in the present instance.   If the assignment did not operate to pass the contract of insurance because the assent of the insurers was not given, it should still be construed as an equitable transfer of the claim of the assignor to compensation for the loss.

"The force of this argument is so obvious, that it must prevail unless excluded by the terms of the policy.   It is well established that a contract should be so construed *ut res valeat;* and general words of grant will consequently be applied to that which the party can transfer, and not to that which he cannot.   A vessel which has been insured is mortgaged.   The insurers do not, perhaps will not, sanction an assignment of the policy.   The loss is, however, payable by the terms of the instrument to the order of the mortgagor, and would be so if there were no express stipulation.   Instead of giving an order or power of attorney, with a clause declaring his intention to pass the fund irrevocably by way of anticipation, he endorses the policy in blank and delivers it to the mortgagee in pursuance of an agreement to keep the property insured for the benefit of the latter.   Manifestly the transaction should be construed in accordance with the intention of the parties as an equitable transfer of the right to receive the money, and not as an assignment of the policy as an insurance.

"It is, however, said, on behalf of the plaintiffs, that the words of the condition are broad enough to include any assignment, either of the policy, as such, or of the amount that may be due under it in the event of loss.   In considering this argument, it is necessary to remember that restraints on alienation are to be strictly construed.   Of two interpretations, that is to be preferred which reconciles their operation with the general principle that every one may give what he possesses or is entitled to receive.   A man who contracts with one person may well refuse to permit another to become a party to the agreement.   This is peculiarly true when the relation is one of trust and confidence, which is necessarily the case between the insurers and the insured.   The former may therefore properly require that they should not be put under an obligation to indemnify a third person by an act to which they do not agree.   But a provision that the insured shall not be permitted to transfer the amount that may become due under the contract as originally made, is a very different thing.   Rights of action

[Insurance Co. of Pennsylvania *v.* Phœnix Insurance Co.]

*ex contractu* are in the contemplation of equity as susceptible of alienation as rights which have been reduced into possession. In either case a restraint imposed capriciously without a sufficient cause, is contrary to good policy and void.

"It is accordingly established that the right of action arising from a loss may be transferred subsequently without the consent of the insurers, notwithstanding the express provision that if such an assignment be made, 'the policy shall be void, and all liability of the company under it shall henceforth cease.' The West Branch Insurance Company *v.* Helfenstein, 4 Wright 289. Woodward, C. J., said that 'however competent it might be for the company to make the contract of insurance dependent upon such a condition, it was not competent for them to limit the legal effect of a claim upon them after a loss. The insured acquired by reason of the loss, a legal right to receive so much money from the hands of the company. That chose in action he might assign. The condition appealed to was not a defence. If it was applicable to a case like that under consideration, it was void and null because opposed to the law of the land.

"In this instance, the assignment was subsequent to the loss; but the reasoning of the Chief Justice is not less in point where the transfer is made previously and designed to take effect when the loss occurs. A man cannot, it is said, assign the freight of the ship which he is about to build, or the wool of the sheep which he intends to buy; but a contingent right depending on an existing contract is assignable in equity, and for some purposes, at law.

"These views are sustained by the cases of Cresswell *v.* The Brooklyn Fire Insurance Company, 39 Barb. 227, and Shotwell *v.* The Jefferson Insurance Company, 5 Bosworth 247, which bear a close analogy to the present, and are indeed identical in principle. The former case was virtually a bill in equity by an unpaid vendor to have the benefit of an insurance effected by the purchaser. It appeared from the evidence that the vendee had gone into possession under an agreement to keep the premises insured as security for the unpaid balance of the purchase-money. A policy was taken out in pursuance of this agreement, which contained the following proviso: 'The interest of the insured in this policy is not assignable unless by consent of this corporation, manifested in writing. In case of any transfer or termination of the interest of the insured, either by sale or otherwise, without such consent, this policy shall thenceforth be void and of no effect.'

"The court held that if the interest of the assured had been assigned without consent, it would have been a breach of the condition, and no recovery could have been had on the policy by any one. It was, however, established under Mellon *v.* The Franklin

[Insurance Co. of Pennsylvania *v.* Phœnix Insurance Co.]

Fire Insurance Company, 17 New York 609, that such a clause did not apply to a transfer of the policy, or of the claim arising under it, after the happening of a loss. In the case before the court, the plaintiff was not an assignee of the policy in the sense of the condition, nor did his claim arise through a transfer of the interest covered by the insurance. His true position was that of an equitable assignee of the right of the purchaser to compensation for the destruction of the premises. It had been contended that an equitable assignment of the policy of insurance was as much within the prohibition of the policy, and within the mischief it was intended to prevent, as a legal assignment. It was not necessary to consider the truth of this proposition, because the right which plaintiff had acquired was not to the policy as such, but to the money due as compensation for the loss. Such an assignment was not equivalent to an assignment of the policy, whether made before or after the occurrence of the injury. The short answer to the objection made on behalf of the insurance company, was that the plaintiff was an equitable assignee of the fund arising out of the obligation of the contract, and not of the policy, and therefore not within the clause prohibiting the assignment of the policy.

The distinction was drawn with much precision in Shotwell *v.* The Jefferson Insurance Company. The plaintiff effected an insurance on his real estate, with a proviso that the premises should not be alienated, or the policy be assigned without the consent of the insurers. He subsequently sold the house, and covenanted to keep it insured for the benefit of the vendee. The latter went into possession, and paid the purchase-money except the last instalment of $1500. It was held, under these circumstances, that the policy was not avoided by the sale. The vendor might recover to the extent of his insurable interest, or, in other words, so far as he was prejudiced by the loss. The judgment must, however, be limited to the amount of the purchase-money. There could be no recovery under the policy for the injury sustained by the vendee. In this regard, it made no difference that the vendor had covenanted to keep the premises insured for the benefit of the purchaser. This stipulation operated as an equitable assignment of any demand that might accrue in his own right; but did not confer an independent right on the covenantee. The consent of the insurers was requisite to the transfer of the policy as an insurance, it was not requisite to the transfer of the policy as a demand. It followed that the insurers were not entitled to subrogation to the lien for the unpaid purchase-money. If such a right could have arisen under other circumstances, it was precluded by the covenant which operated as an implied assignment, entitling the vendee to have the fund applied to the extinguishment of the unpaid balance of the purchase-money.

[Insurance Co. of Pennsylvania *v.* Phœnix Insurance Co.]

We may, therefore, draw the following inferences with regard to the case in hand : 1st. That the assignment should be viewed as a transfer of the claim for damages in the event of loss, and not of the policy as a contract to insure ; and next, that this claim might be transferred without the consent of the insurers, notwithstanding any provision to the contrary in the contract. If, however, we thought differently on these points, we should still be of opinion that the plaintiffs were not entitled to judgment. The policy is against losses by the perils of the sea ; and might, consequently, pass to any one who acquired a title to the vessel unless restrained : Powles *v.* Jones, 13 M. & W. 101. The restraint imposed was not absolute, but that no transfer should be valid without the consent of the insurers, 'unless the premium had been paid or the note given therefor was further secured by the previous endorsement of the person or persons for whose benefit the assignment was intended.' The premium was not paid when the insurance was effected by Trask, nor was the note given for it endorsed by Bell when the policy was subsequently transferred ; but on the 16th of September 1868, the garnishees came to a settlement with Messrs. Moody & Telfair acting for Bell, by which it was agreed that the loss should be paid to him after deducting the amount of a judgment which had been obtained for the premiums due by Trask. This arrangement took place prior to the attachment, and with full knowledge that Bell claimed as assignee. The effect was to satisfy the premiums by setting them off against the amount due under the assignment. It was, therefore, not only an admission by the garnishees that the assignment was valid, but a bar precluding them from alleging the non-payment of the premium as a reason why it should be void. A provision against the transfer of a policy is intended for the benefit of the insurers, and, if waived by them, cannot be set up by a creditor under a subsequent attachment.

"The case is, therefore, against the plaintiff in every respect, and judgment is entered for the garnishees on the points reserved."

The plaintiffs took a writ of error.

The specifications of error were :—

1. Reserving the 2d point, because the statements therein contained were not agreed to by the parties, nor was there any evidence to support the same.

2 and 3. Not entering judgment for the plaintiff on the verdict ; and entering judgment for the garnishee on the points reserved *non obstante veredicto.*

J. H. Gendell and E. S. Miller, for plaintiffs in error.—A mortgagee, as such, has no interest in an insurance by the mortgagor : Phillips on Ins., § 405. A "policy for whom it may concern" is for the benefit of those who are, in the contemplation of

[Insurance Co. of Pennsylvania v. Phœnix Insurance Co.]

the parties, making the insurance: 2 Duer on Ins. 30–34; 2 Phillips on Ins., §§ 379–383; De Bolle v. Ins. Co., 4 Wharton 68; Steele v. Franklin Ins. Co., 5 Harris 290.

The assignment was invalid under the last clause of the policy, 1st, because the premium had not been paid, nor the note given therefor secured by the endorsement of the assignee: 2d, because the consent of the insurers was not obtained.

The restriction is valid: Ferree v. Ins. Co., 17 P. F. Smith 373; 1 Phillips on Ins. § 107; 1 Parsons on Marine Ins. 60; and it is doubtful whether a transfer before loss of the amount, if any, that might become due under the policy, would be sustained. The confidential relationship between the insurer and the insured still exists. It would very palpably have been a mere device to avoid the effect of the condition.

The 2d point was improperly reserved: the facts, upon which the point reserved arises, must be either admitted on the record, or found by the jury: Wilson v. Steamboat Tuscarora, 1 Casey 317. There was no evidence of the facts assumed by the court to exist.

*J. B. Thayer,* for defendants in error.—The words, " for whom it may concern," and loss if any payable to assured or order, imply an intention to cover other interests than that of the insured, and constitute an express waiver of the condition requiring the assent of the insurers to an assignment: 1 Parsons on Ins. 55, 56; Nat. Ins. Co. v. Crane, 16 Md. 260; Brown v. Roger Williams Ins. Co., 5 R. I. 394; Rogers v. The Traders' Ins. Co., 6 Paige 583; 1 Parsons on Ins. 65. The assignment to which the restraining clause in a marine policy is intended to apply, is an absolute assignment, not an assignment to a mortgagee as collateral: 1 Parsons on Ins. 59; Ellis v. Kreutzinger, 27 Missouri 311; Folsomb v. Belknap, 10 Foster 231; Lazarus v. Commonwealth Ins. Co., 5 Pick. 76; Price v. Tower, 1 Gray 426; Mellen v. Hamilton Ins. Co., 17 N. Y. 635. There was an express waiver of the condition when the garnishee, prior to the attachment, and knowing of the assignment, agreed upon a settlement of the loss. Such waiver may be by parol: Penna. Ins. Co. v. Bowman, 8 Wright 89; Buckley v. Garrett, 11 Id. 204. A policy of insurance is transferable like any other chose in action, and without notice to the underwriters, vests an equitable interest in the assignee: 1 Parsons on Ins., p. 52; Godin v. London Ins. Co., 1 Burrows 496; Wells v. Archer, 10 S. & R. 412; 1 Phillips on Ins. 98.

A clause prohibiting assignments after loss, is void: West Branch Ins. Co. v. Helfenstein, 4 Wright 289. A chose in action, equitably assigned, is not liable to attachment: Canal Co. v. Ins. Co., 2 Phila. R. 354; Nesmith v. Drum, 8 W. & S. 9; Watson

[Insurance Co. of Pennsylvania *v.* Phœnix Insurance Co.]

*v.* Bagaley, 2 Jones 164; United States *v.* Vaughan, 3 Binn. 394; Pellam *v.* Hart, 1 Barr 263; Cromwell *v.* Brooklyn Ins. Co., 39 Barbour 227; Dickinson *v.* Philips, 1 Id. 454; Carter *v.* Rocket, 8 Paige 437; Providence Bank *v.* Benson, 24 Pickering 204; Drake on Attachment, § 204.  An attaching creditor stands upon no better footing than his debtor: United States *v.* Vaughan, 3 Binn. 394; Dix *v.* Cobb, 4 Mass. 508; Walker *v.* Coover, 15 P. F. Smith 430; Drake on Attachment, § 608 *et seq.*; Walters *v.* Washington Ins. Co., 1 Iowa 404.

The opinion of the court was delivered February, 15th 1872, by SHARSWOOD, J.—We affirm the judgment upon the opinion given by the learned president of the District Court.  The condition contained in the policy against assignment was for the benefit of the insurers and could be waived by them, and even if the question arose upon the record we think there was ample evidence that they did waive it.   No exception was taken to the reservation in the court below, and such being the case, we are bound to assume that it was assented to or acquiesced in by all parties as a true statement of the facts.   Very great injustice might be done if a party not objecting at the time of the reservation should be permitted afterwards to take the ground that there was no evidence of the facts or that they ought to have been submitted to the jury.   If a point of law be reserved it must be done by stating on the record the facts on which it arises: Winchester *v.* Bennett, 4 P. F. Smith 510; Wilde *v.* Trainor, 9 Ibid. 439; Ferguson *v.* Wright, 11 Ibid. 258; Campbell *v.* O'Neill, 14 Ibid. 290.   Unless the facts are found by the jury specially, there is no mode of reserving a question but by an agreement, and if the judge states the facts without such an agreement, the party must make his objection and enter his exception at the time according to every rule for the fair trial of causes.

Judgment affirmed.