## Edgar E. Showalter *v.* Frank Ehlan and Fred. Rowe, Appellants.

*Contract—Cause of action—Payment in goods purchased by a miner.*

No recovery can be had nor is a cause of action disclosed under the Act of May 20, 1891, P. L. 96, when it appears that the plaintiff, who sued to recover wages, worked as a coal miner for defendants, and according to the course of dealings between the parties was fully paid for his labor, partly in money and partly by goods voluntarily purchased by him from defendants' store.

*Statutes—Constitutional law—Company stores.*

The attempt of the Act of May 20, 1891, P. L. 96, to prevent employers and employees from making their own contracts is merely a repetition of what was vainly sought to be done by the Act of June 29, 1881, P. L. 147, and therefore is invalid.

Argued May 5, 1897. Appeal, No. 138, April Term, 1897, by defendants, from judgment of C. P. Somerset Co., Feb. T., 1896, No. 91, on verdict for plaintiff. Before RICE, P. J., WILLARD, WICKHAM, BEAVER, REEDER, ORLADY and SMITH, JJ. Reversed.

Assumpsit by a miner to recover wages. Before LONGENECKER, P. J.

The facts appear from the opinion of the court below:

The plaintiff worked for the defendant company as a coal miner from October, 1894 to October, 1895, his wages amounting to $342.16; on which he admitted payments in cash, oil, powder, etc., used in mining, to the amount of $148.45 and leaving a balance of $193.71, which, with interest to the date

of trial, left $201.13.   The defendant claimed that goods had been purchased by the plaintiff out of its store at Meyersdale, about one and a half miles from the mines, to the full amount of the said balance of $193.71, thus squaring the account.   The purchases were not denied, but the plaintiff contended that on account of the Act of May 20, 1891, P. L. 96, which provides that wages of this character shall be paid "semi-monthly in lawful money of the United States, for the full, net amount of wages or earnings due said employee," the sums owing for the goods so bought could not be set off against the claim for wages.

The facts are not in dispute.   But one witness was called and his testimony is undisputed.   It was Frederick Rowe, one of the defendant company, and what he said is substantially as follows: "The plaintiff was employed mining by the ton.   He was regularly paid each monthly pay day, about the 20th.   I settled with him myself.   No rule required him to buy at the defendant's store; he could buy or not; he could go elsewhere. There was no compulsion; he did not object to the settlements. Settled with him every month for the preceding month in that way.   The account was always squared.   There was never any objection."   And on cross-examination he said: "Monthly statements were made showing the amount of his work and amount of his bill for oil and powder, and also his store account, and that put in an envelope and handed to him.   Gave him the envelopes and handed him the money coming to him.   That was the only settlement there was.   During the last two months he worked, September and October, 1895, he did not get the statements; he never called for them."

The reserved point is as follows: [That as the undisputed evidence shows and it is conceded by the plaintiff, that while in the employ of the defendants from October, 1894 to October, 1895, he voluntarily purchased goods out of the defendants' store, that monthly statements of the account of the plaintiff in the store were rendered by the defendants to the plaintiff showing that the balance owing the plaintiff each month, after deducting bills for coal oil, and smithing, powder, etc., and the bills for goods purchased in the store was paid to him, that he accepted the balance in cash and made no objection to the monthly accounts so rendered to him, therefore, the amount of the bills for store goods furnished the plaintiff by the defend-

ants was a valid payment to the plaintiff of the whole of his account, and under all the evidence the verdict must be for the defendants.] [1]

It will be observed that this case differs from others appearing in the books, arising under the acts of 1881 and 1891, in the fact that there was no agreement that the goods should be credited on the account for labor. But at the end of each month the account was balanced and settled. A statement was made showing the condition of the account for the preceding month by items, and the balance appearing due the plaintiff thereon was handed to him and accepted in payment without a word of objection. So far as settlements were thus made we think they are as conclusive and binding on him as if he had agreed in advance that his purchases should be applied to the payment and satisfaction of his wages.

The first section of the act of 1891, requiring payment of such wages in money, is in that respect merely a rescript of the act of 1881, which was declared unconstitutional in the case of Godcharles & Co. v. Wigeman, 113 Pa. 431. If it was in conflict with the organic law, it cannot be doubted that this provision of the later act offends quite as clearly against it. It is thoroughly well settled by the above mentioned case from our Supreme Court and others from the district courts that no act of assembly can disqualify a laborer, or any other person, from making his own contract or relieve him from its binding obligation: Hamilton v. Jutte & Co., 16 C. C. R. 193; Row v. Haddock, 3 Kulp, 501; Com. v. Isenberg & Rowland, 4 Dist. Rep. 579; Sally v. Berwind-White Coal Co., 5 Dist. Rep. 316.

This being so, a settlement made by the miner in which his bill of goods was applied in discharge and payment of his wages, must be given the same effect as if he had made a contract to that end in advance.

Prior to the passage of the acts mentioned a laborer always could demand payment of his wages in money, if he had made no agreement to the contrary, but the purpose of these two statutes was to enable him, after making an agreement to accept another commodity in lieu of cash, and receiving it, to repudiate the agreement and recover payment again in money. Common honesty forbids that, and the law estops him from doing it. If men could thus, by classes, obtain license from the legislature

to play fast and loose with their bargains, the most solemn contractual relations would soon become a mere farce and the civil courts might as well be closed. The fate of the act of 1881 should have been a sufficient warning against the passage of that of 1891.

With the foregoing view of the law all the plaintiff's wages must be taken as paid except for the last two months, for which there was no settlement, no agreement and no waiver shown. It therefore remains to determine whether the right of set-off exists as to those two months, independently of any agreement or arrangement between the parties for that purpose.

Strictly speaking, the right of set-off is wholly of statutory origin. At common law cross demands were recoverable only by separate actions, though, as Justice GIBSON says in Ramsey's App., 2 Watts, 228, " there is a fallacy in supposing defalcation in a case like the present to be a legal right. Judgments are set against each other not by force of the statute, but by the inherent powers of the courts immemorially exercised, being almost the only equitable jurisdiction originally appertaining to them as courts of law. An equitable right of setting off judgments, therefore, is permitted when it will infringe on no other right of equal grade." That relates to claims which had gone into judgment. "At common law a defendant who was sued by his creditor, could not set up a debt due him by the plaintiff, by way of counterbalancing the plaintiff's recovery, although the amount of such debt was the greater. The defendant was driven to a separate action to recover his own claim. This not only tended to multiplicity of suits but if the plaintiff happened to be in circumstances of insolvency, often resulted in positive injustice : " 22 Am. & Eng. Ency. of Law, 222. To meet such inequitable results legislation was adopted, and in Pennsylvania the defalcation act of 1705. A party can be deprived of the right by nothing less than his own contract or a statute : Reed v. Penrose, 36 Pa. 214–234 ; Lloyd's App., 95 Pa. 518.

So the defendant would clearly be entitled under our statute of 1705, and the plea of defalcation in this case, to set off against any wages earned in the last two months the defendant was employed, its account for goods, were it not for the Act of March 4, 1887, P. L. 4, which provides, " That no exemption of property from attachment, levy or sale upon execution, shall be allowed

upon judgments for $100, or less, obtained for wages of manual labor." Under this act it was held that wages due a laborer could not be attached, even though the attaching judgment was also based on a claim for manual labor: Frutchey v. Lutz, 167 Pa. 337. In Welliver v. Fox, 4 Dist. Rep. 197, Judge LYONS permitted a judgment to be set off against another obtained for wages of labor, but the plaintiff had expressly waived the benefit of exemption in the judgment offered to be set off, and, as the court said "the respective demands therefore stood upon an equal footing." On the other hand, Judge PERSHING, in Bosche v. Maurer & Rothermel, 5 C. C. R. 215, held that under the act of March 4, 1887, supra, another judgment without waiver could not be set off against one on a claim for wages. In the case of Shoemaker v. Fosser, 8 C. C. R. 479, it was proposed to set off a judgment without waiver of exemption against one containing a waiver, and Judge RICE held it could not be done, for the reason that, "if the defendant were permitted to use it as an offset against his creditor's judgment in spite of the latter's claim to have the benefits of the exemption law, he would be permitted to take property for the payment of his debt, which, as to his assignor, would have been exempt; thus indirectly, the benign purpose of the law would be defeated. . . . The right to set off one judgment against another is not a legal but an equitable right, and therefore is not permitted where it will infringe on another's right of equal grade."

In our case the respective claims are not of the same grade under the statutes. The right of exemption might be claimed against the one and not against the other. It may seem inequitable that the plaintiff should be allowed to demand payment of his wages and at the same time refuse payment of his account and set up the right of exemption against it if he chooses, but it is just such inequality that the statutes meant to accomplish, and the parties must be presumed to have dealt with the existing law in view. As to the two months mentioned, there is no evidence of any agreement, waiver or understanding whatever, and therefore the plaintiff's statutory rights are in no way effected or impaired.

We have nothing before us to show either the amount of wages earned during that time, or the amount of goods not included in the previous settlements. But the plaintiff is enti-

tled to recover for the amount of wages not embraced in the statements or settlements. This amount can doubtless be readily ascertained.

The defendants having moved the judgment non obstante veredicto the court directed judgment to be entered as follows:

"And now September 1, 1896, it is ordered that the verdict be modified and reduced so that judgment may be taken and entered thereon only for the amount of wages due the plaintiff not embraced in the last statement on settlement, but accruing to him during the last months of his employment."

Judgment was rendered in favor of the plaintiff against the defendants for the sum of $31.09. Defendants appealed.

*Errors assigned* among others were (1) Refusal to affirm defendants' point, reciting same. (2) Reserving point and entering judgment as above.

*W. J. Baer* and *Koontz & Ogle*, for appellants.—The acts and declarations of the parties under an agreement are to be taken as a guide to their understanding and intentions in giving a construction to the writing: Lehigh Coal & Navigation Co. v. Harlan, 27 Pa. 430. See also Archer v. Dunn, 2 W. & S. 327; Pratt v. Campbell, 24 Pa. 184.

We claim, therefore, that this is not a case of set-off (under the statute) of mutual unconnected debts, but the whole course of dealings between the parties, during the entire thirteen months that the plaintiff was in defendants' employ, was so connected that the sale of goods by defendants to the plaintiff during his employment operated as payment pro tanto.

The ruling of the court below was based on the Act of March 4, 1887, P. L. 4, which provides that "No exemption of property from attachment, levy or sale upon execution, shall be allowed upon judgment for $100 or less, obtained for wages for manual labor."

In this ruling we submit there was error, as we do not think that the act of March 4, 1887, covers a case like this, nor that the decisions quoted by the learned judge of the court below sustain the view taken by him.

No paper-book or appearance for appellee.

OPINION BY WICKHAM, J., July 23, 1897:

The uncontradicted evidence in this case shows, that the plaintiff worked as a coal miner for the defendants for some thirteen months, and, according to the course of dealing between the parties, was fully paid for his labor partly in money and partly by goods, voluntarily purchased by him from the defendants' store.

He seeks, in the present action, to recover such portion of his wages as was paid by goods, less $37.18, which he is willing to allow for powder, oil, etc., alleging that under the Act of May 20, 1891, P. L. 96, he is entitled to recover his earnings in lawful money, and also that the Act of March 4, 1887, P. L. 4, providing that no exemption shall be allowed as against executions on judgments for $100 or less, obtained for wages of manual labor, indirectly prohibits the defendants from setting off the price of the goods against his claim.

As this is an action for the recovery of $193.71, and not an execution on a judgment for $100 or less, we fail to see how the act of 1887 has any application. Moreover, the course of dealing between the parties clearly shows their understanding to have been, that the goods as they were purchased from time to time, were to be payments on the plaintiff's wages, hence no question of set-off could properly arise in the case, and if it did, the decisions relating to the setting off of one judgment against another would not be applicable.

As to the attempt, in the act of 1891, to prevent employers and employees from making their own contracts, it is merely a repetition of what was vainly sought to be done by the act of June 29, 1881, P. L. 147, and therefore is invalid, under the principles so forcibly announced by our Supreme Court in Godcharles v. Wigeman, 113 Pa. 431. In that case, decided in 1886, it was held that the act of 1881 so far as it applied to the matter we are now considering was utterly unconstitutional and void, the court saying: " The act is an infringement alike of the right of the employer and the employee; more than this, it is an insulting attempt to put the laborer under a legislative tutelage, which is not only degrading to his manhood, but subversive of his rights as a citizen of the United States."

The reserved point, wherein we must look for the controling facts sets forth inter alia, " that monthly statements of the ac-

count of the plaintiff, in the store, were rendered by the defendants to the plaintiff, showing that the balance owing the plaintiff each month, after deducting bills for coal, oil, and smithing, powder, etc., and the bills for goods purchased in the store, was paid to him, that he accepted the balance in cash, and made no objection to the monthly accounts so rendered to him." This was equivalent to a finding of fact, that the settlements embraced every month of the employment. Whether or not it was fully sustained by the evidence we cannot now inquire. No objection was made by the plaintiff's counsel to the facts as stated in the point, hence they are conclusive : The Ins. Co. of Pa. v. The Phœnix Ins. Co., 71 Pa. 31. We are therefore compelled to go a little further than did the learned judge of the court below, who confined the plaintiff's recovery to the wages of the last two months of his employment, and hold that he was not entitled to judgment for any amount whatsoever. An examination of the whole evidence, if permissible, would lead also to the same conclusion, as it sufficiently shows that the understanding, between the plaintiff and the defendants, was that the goods furnished him from time to time were received on account of his wages.

The judgment is reversed and judgment is now entered for the defendants on the reserved point.