Gorman's Estate.

Argued January 20, 1936. Before KEPHART, C. J., MAXEY, DREW, LINN and BARNES, JJ.

*John C. Youngman,* with him *Max L. Mitchell,* for appellant.

*John E. Cupp,* with him *Herbert T. Ames,* for appellees.

OPINION BY MR. JUSTICE DREW, March 23, 1936:

Daniel E. Gorman died testate on May 25, 1925. At the time of his death he was the owner of various pieces of real estate, among which was a business property in Williamsport known as "The Danco." The latter was devised to the testator's widow for life, with remainder to the deceased's brother and three sisters. On February 21, 1932, the building was completely destroyed by fire. It had been under lease to a tenant and the widow had been receiving the rents. The insurance carried by the decedent at the time of his death totaled $35,000. Thereafter the life tenant had from time to time renewed the insurance, the policies being carried in her own name. All of them provided that the insured was the sole and unconditional owner. On the other hand, it very definitely appears (and the chancellor has found) that, when the insurance was originally

taken out the agent knew that her interest was simply
a life estate, that she wanted to protect that interest
alone, that she did not want to protect the interest of the
remaindermen, and that she was not willing to pay the
expense of the latter protection. At the time of the fire,
the aggregate amount of the policies was $27,250—ap-
proximately the full value of the building. The life ten-
ant made the proofs of loss and the damage was adjusted
at $19,499.64, being the replacement value of the struc-
ture. During the course of the settlement the insurers
became aware of the fact that the insured's interest was
merely for life. Of their own volition, and without any
consent on her part, they reformed the policies to include
the remaindermen among the insured; the checks in set-
tlement were drawn accordingly.

The life tenant demanded the full proceeds. Her de-
mand was resisted by the remaindermen, who, never hav-
ing effected any insurance upon their own interests,
nevertheless argued that the proceeds of the insurance
stood in place of the building, and that the corpus there-
of was their property. In reply the life tenant con-
tended that the contract was entirely personal between
herself and the insurers and that the remaindermen had
no interest at all in the proceeds. For the purpose of
settling the dispute, the parties entered into a written
agreement under the terms of which the checks were en-
dorsed by the several parties and the proceeds placed in
a bank, to be paid out as they all should agree or as a
court might direct. An amicable settlement was impos-
sible, and the remaindermen filed a petition in the court
below under section 23* of the Fiduciaries Act of June
7, 1917, P. L. 447, the prayer of which was that the life
tenant be required to show cause why she should not give
the security required by the act, following which she
should receive the fund. She filed an answer, a hearing

* That section provides for the giving of security for the protec-
tion of remaindermen by those having limited interests in personal
property.

was had, and the chancellor entered a decree under which the life tenant was given the fund provided that she furnish security conditioned upon the payment of the corpus to the remaindermen upon her decease. Upon her failure to furnish such security, a trustee was to be appointed by the court to take the fund, pay the income thereof to the life tenant, and distribute the corpus to the remaindermen upon her death. From the decree so entered the life tenant has appealed.

We think appellant's position is clearly correct and the decree of the court below must be reversed. A fire insurance policy is a personal contract. An important feature of such indemnity is the personal equation that exists between insurer and insured. The building itself is not insured; the indemnity is provided for the insured and for his interest in the property: *Brownell v. Board of Education,* 239 N. Y. 369, 374. Those having different interests have separate insurable risks. In the present case, the remaindermen might have effected insurance upon their interests in the same manner as the life tenant insured her interest. She was under no obligation to protect their interests when they themselves neglected to do so. It is obvious that they cannot now be heard to claim an interest in the proceeds of the insurance which she provided for the preservation of her own interest.

Ordinarily, in the absence of any obligation or agreement to insure for remaindermen, a life tenant who takes out insurance for his own benefit is entitled, as against the remaindermen, to the full proceeds of the policies in the event of loss: *Bell v. Barefield,* 219 Ala. 319; *Corder v. McDougall,* 216 Cal. 773; *Caldwell v. Stadacona F. and L. Ins. Co.,* 11 Can. S. C. 212; *Spalding v. Miller,* 103 Ky. 405; *Harrison v. Pepper,* 166 Mass. 288; *King v. King,* 163 Miss. 584; *Re Estate of Susan Curry,* 33 N. S. 392; *Bennett v. Featherstone,* 110 Tenn. 27; *Thompson v. Gearheart,* 137 Va. 427; *Underwood v. Fortune,* 9 S. W. (2d) 845 (Mo. App.); *Addis v. Addis,* 60

Hun 581, 14 N. Y. S. 657; *Grant v. Buchanan,* 36 Tex. Civ. App. 334; see *Rendahl v. Hall,* 160 Minn. 502, 505; cf. *Zehring's Est.,* 4 Pa. Superior Ct. 243, 252; *Warwicker v. Bretnall,* 23 Ch. D. 188; *Blanchard v. Kingston,* 222 Mich. 631; *Miller v. Gold Beach Packing Co.,* 131 Ore. 302. The fact that the life tenant's insurance represents the full value of the property is not generally regarded as sufficient, of itself, to create an interest in the remaindermen: *Caldwell v. Stadacona F. and L. Ins. Co.,* supra; *Spalding v. Miller,* supra; *Harrison v. Pepper,* supra; *King v. King,* supra; *Underwood v. Fortune,* supra; see *Re Estate of Susan Curry,* supra; *Grant v. Buchanan,* supra; cf. *Miller v. Gold Beach Packing Co.,* supra. Contra: see *Sampson v. Grogan,* 21 R. I. 174, 187. A different result has been reached, however, where the insurance was intended to protect the interests of all the parties (*Welsh v. London Assurance Corp.,* 151 Pa. 607), or where the legal relation between life tenant and remainderman is held to be one of trust, in which event any insurance effected by the life tenant inures to the benefit of the remaindermen: *Clyburn v. Reynolds,* 31 S. C. 91; *Green v. Green,* 50 S. C. 514. The fact that there was an express fiduciary obligation on the part of the insured to another party having a beneficial interest in the premises seems to have led courts in some instances to depart from the general rule: *Clark v. Leverett,* 159 Ga. 487; *In re Cameron's Est.,* 158 Mich. 174.

No facts or circumstances in this case remove it from the ordinary rule permitting the life tenant to retain the entire proceeds of her contract of indemnity. She had no intention of insuring the interests of the remaindermen, nor did she stand in any fiduciary relationship to them. In this State a life tenant is not a trustee of the premises for the remaindermen: *Fidelity, etc., Deposit Co. v. Dietz,* 132 Pa. 36. While the insurers might have insisted upon the limitation of her recovery to the value of her life estate, it is of no concern to the remaindermen

that appellant is to receive the full value of the building. Any argument based upon public policy was for the insurers, and not for the remaindermen. They have no greater claim to the excess than has the life tenant. To say that she must be held to be a constructive trustee of the excess is to overlook the very nature of the transaction. The fund represents indemnity for loss sustained; it does not constitute the proceeds of the property destroyed.

There is no merit in the contention that appellant ratified the endorsements on the policies whereby the remaindermen were included among the insured. This argument is based upon the fact that she proved the total loss under the amended policies, that she endorsed the checks and entered into the agreement whereby the proceeds of the policies were deposited in the special account, and finally, upon the fact that the parties subsequently agreed to pay out of the fund certain items of expense, among which was a payment to her in "reimbursement" for "premiums of insurance from which the fund was derived." It very clearly appears that the changes were made by the insurers, without her knowledge or consent, and solely with a view toward their own protection against possible liability for erroneous settlement. There is no evidence of acquiescence on her part. The proofs of loss were not introduced into evidence, and nothing in the record shows that they in any way indicated assent by the life tenant to the creation of an interest in the remaindermen. The fact that she endorsed, along with the remaindermen, the tendered checks, and entered into the depository agreement, is certainly not indicative of any willingness on her part to give up any share in the fund to the remaindermen. It is apparent that she continually demanded the entire proceeds.

Nor can any conclusion be drawn from the fact that she received from the fund a sum of money on account of "premiums of insurance from which the fund was derived." Just what this sum represented does not appear.

Even if her claim to the undiminished fund were refused, she would be entitled to repayment on account of the premiums which she herself had paid. There was no objection, therefore, to "reimbursement" on this account prior to the settlement of the dispute. The argument that the remaindermen were reimbursing appellant assumes an interest on their part in the fund. This begs the whole controversy—for appellant disputes their right to any interest in the fund. Appellant's rights were established as of the time of the loss, and any argument to the effect that she by her subsequent conduct ratified or adopted the actions of the insurers and their agent, whereby her rights in the proceeds were to be substantially diminished, would certainly require clear evidence of such intention. We are satisfied that there was no such intention here.

The remaindermen argue that appellant's policies, providing that the insured was the sole and unconditional owner, were null and void because she was merely a life tenant. They then contend that appellant, having taken advantage of the reformation by which the insurers waived their defense, cannot now upset this bargain, whereby the fund was realized. The answer must be that the agent knew of her limited interest and the insurers were therefore barred to assert the variance: *Headley's Exp. & Storage Co. v. Pa. Indemnity Corp.*, 319 Pa. 240, and cases therein cited. Nor is the fact that the insurers had an option to rebuild (in which event the remaindermen would have been entitled to the benefit of the structure upon the death of the life tenant) sufficient to raise an equity for the remaindermen in the cash settlement that followed the insurer's election not to rebuild: see *Quarles v. Clayton*, 87 Tenn. 308, 318-319.

*Welsh v. London Assurance Corp.*, supra, strongly relied upon by the remaindermen, does not stand in the way. There the life tenant carried insurance to the full value of the fee. She was permitted, in an action

against the insurer, to recover the full value, but was held to be a trustee for the remaindermen as to the amount in excess of the value of her life interest. In that case, however, it appeared by the uncontradicted evidence that she intended to insure not only her own interest but also that of the remaindermen. But in the present case, it is clear that appellant's intent was to exclude the remaindermen.

In this disposition of the case it is unnecessary to pass upon the other questions that have been argued by counsel.

The decree of the court below is reversed, and it is ordered that the fund be delivered to the life tenant, absolutely; costs to be paid by the appellees.

