Spires et ux., Appellants, *v.* Hanover Fire Insurance Company.

Argued September 27, 1949. Before MAXEY, C. J.,
DREW, LINN, STERN, PATTERSON, STEARNE and JONES, JJ.

*Charles E. Kenworthey*, with him *Howard N. Plate,
Frank B. Quinn* and *Quinn, Leemhuis, Plate & Dwyer,*
for appellants.

*John B. Brooks* and *John G. Gent*, with them *Brooks,
Curtze & Silin,* for appellee.

OPINION BY MR. JUSTICE HORACE STERN, January 16, 1950:

The issue here involved may appear superficially to be one merely of procedure but in reality the question is whether an insurance company must account for the performance of its obligations under a policy of fire insurance to anyone other than the named insured.

Plaintiffs in September, 1944 leased a tract of land owned by them to one Mary E. Kaehler for a term of one year, which was later extended for a term of two additional years. The land contained an aeroplane hangar and was laid out as an airport. The lease provided that if the lessee built additional hangars on the premises they should remain her property and be removable by her on the termination of the lease. The lessee agreed to "keep the buildings now erected or to be erected upon said premises insured against loss by fire, at her own cost and expense", and also to "keep all runways and hangars in good condition and proper repair at her own proper cost and expense."

Some time after the execution of this lease the lessee took one Louis A. Raub as a partner in the operation of the airport. In November, 1946 they—the partners—obtained from the Hanover Fire Insurance Company a policy which provided that the company, for the term of three years, "to an amount not exceeding Fifteen Thousand Dollars, does insure Louis A. Raub and Mary Eileen Kaehler . . . to the extent of the actual cash value of the property at the time of loss, . . . ." The property insured was described as including the one story building known as Hangar No. 1 (which was the hangar on the premises when the lease was executed), the personal property contained therein, the one story building known as Hangar No. 2, and the one story building known as Hangar No. 3. The personal property

in Hangar No. 1 belonged to Kaehler and Raub, and Hangars Nos. 2 and 3, which had been erected by them after the execution of the lease, also belonged to them. Kaehler and Raub paid all the premiums on the policy.

A fire occurred in March, 1947 which resulted in a total loss of Hangar No. 1 and other property on the leased premises. Kaehler and Raub settled with the Insurance Company for the loss occasioned by the fire but in an amount which did not include the value of Hangar No. 1. They refused to file a proof of loss in regard to that hangar and they refused also to institute any action against the Insurance Company for the loss sustained by its destruction. Thereupon plaintiffs themselves filed a proof of loss and brought the present action against the Insurance Company to recover for that loss, averring in their complaint all the facts above stated. Defendant demurred on the ground that the complaint did not show any right of action against it on the part of plaintiffs. The court below below sustained the demurrer and dismissed the complaint, from which order plaintiffs have appealed.

The sole question is whether plaintiffs can recover on a fire insurance policy in which they are not named as a party and in which they are not referred to in any manner whatsoever. That the policy was entered into by Kaehler and Raub as plaintiffs' *agents*—which would give plaintiffs the status of undisclosed principals—is not supported by the facts of the transaction, and indeed plaintiffs make no such claim. Apparently the only ground upon which they assert a right of action is their contention that the insurance was taken out for their benefit in pursuance of the provision to that effect in the lease.

There are two reasons why this claim is untenable. The first is that their contention that the insurance was carried primarily for their benefit is unwarranted. The

lease provided that the lessee was to keep the hangars in good condition and repair at her own cost and expense; she thereby obligated herself to restore plaintiffs' hangar at the time of the termination of the lease even though it were meanwhile destroyed by fire or other accident: *Hoy v. Holt,* 91 Pa. 88; *Girard Trust Co., Agent, v. Tremblay Motor Co.,* 291 Pa. 507, 518, 140 A. 506, 510. 'In view of that obligation the lessee had a primary and paramount insurable interest of her own in the policy, that interest being the value of the property which she was bound to replace: *Imperial Fire Insurance Co. v. Murray,* 73 Pa. 13. A policy of fire insurance is a personal contract of indemnity against such loss as the *insured* may sustain; the insurance is not of the property as such, but of the *interest of the insured in* the property: *Gorman's Estate,* 321 Pa. 292, 295, 184 A. 86, 87; *Olyphant Lumber Co. v. Peoples' Mutual Live Stock Insurance Co. of Philadelphia,* 4 Pa. Superior Ct. 100, 104; *Abbottsford Building & Loan Association v. William Penn Fire Insurance Co.,* 130 Pa. Superior Ct. 422, 426, 197 A. 504, 506. What defendant's policy insured, therefore, was the interest of the partners, Kaehler and Raub, in the property insured.

The other reason why plaintiffs cannot recover on the policy is because, whatever incidental interest they may have had therein, and even if, *as between them and the lessee,* they were meant to be a beneficiary thereof, they are not referred to in the *policy itself* as an intended beneficiary; indeed it does not appear that the Insurance Company ever knew of the lease from plaintiffs to Kaehler, or even that any such persons as plaintiffs existed. To be a third party beneficiary entitled to recover on a contract it is not enough that it be intended by *one* of the parties to the contract and the *third person* that the latter should be a beneficiary, but *both parties to the contract* must so intend and must indicate

that intention in the contract; in other words, a promisor cannot be held liable to an alleged beneficiary of a contract unless the latter was within his contemplation at the time the contract was entered into and such liability was intentionally assumed by him in his undertaking; * the obligation to the third party must be created, and must affirmatively appear, in the contract itself: *Klinger v. Wick,* 266 Pa. 1, 5, 6, 109 A. 542, 543; 17 C. J. S. 1127-1130, §519(c); 12 Am. Jur. 831, 832, §280; 833, 834, §281. The fact, therefore, that plaintiffs would be incidentally benefited would not give them a right to recover on the policy by virtue of any arrangement between them and Kaehler where the Insurance Company assumed no obligation to them in the policy but believed itself to be insuring only the interest of the persons named therein.

Plaintiffs suggest that they are entitled to bring suit on the policy because of Pa. R. C. P. 2002, which provides that all actions shall be prosecuted by and in the name of the real party in interest. This, however, overlooks the fact that Rule 2002 is merely procedural in scope and does not work any change in the substantive law; it does not go into operation until after it has been determined that a given person *is* the real party in interest: Goodrich-Amram, §2002(a)-2; §2002(a)-14. From what has heretofore been said it is clear that plaintiffs are *not* the real party in interest, for the real party in interest in any given contract or chose in action is the person who can discharge the duties created and

---

* It is true that a third party beneficiary may be in contemplation without being specifically or individually designated; for example, there is a type of policy frequently taken out by a bailee covering goods in his possession "on account of whom it may concern", or by "trust and commission", or with similar clauses; in such cases the bailor may recover on the policy. The present policy contained an "in trust or on commission" clause but only with respect to the personal property, not the land and hangars.

control an action brought to enforce rights,—not necessarily the person who may be ultimately entitled to the benefit of any recovery obtained nor the person beneficially interested therein: Goodrich-Amram, §2002(a)-3; *Kusmaul v. Stull,* 356 Pa. 276, 280, 51 A. 2d 602, 604. To be the real party in interest one must not merely have *an interest in the result of the action* but must be *in such command of the action* as to be legally entitled to give a complete acquittance or discharge to the other party upon performance. It is obvious that plaintiffs did not have the right to discharge defendant's obligations under this policy; only a release by the named insured could effect such a discharge.

As stated in the beginning of this opinion, the issue under discussion is not merely a procedural one. The real question is whether plaintiffs have a *substantive* cause of action against defendant. If it were to be held that such a cause of action existed the Insurance Company would be deprived thereby of two fundamental rights. One such right is its privilege to choose the person to whom it is willing to issue an insurance policy. "The safety of the insurer is dependent much upon the character of the assured, not alone upon his integrity and good faith, but upon his habits of carefulness, of prudence, and vigilance. It is obvious that the danger of fire may be much less when the assured is a man watchful and provident than where he is heedless and negligent, as well as dishonest": *State Mutual Fire Insurance Co. v. Roberts,* 31 Pa. 438, 440. 'A man who contracts with one person may well refuse to permit another to become a party to the agreement. This is peculiarly true when the relation is one of trust and confidence, which is necessarily the case between the insurers and the insured. The former may therefore properly require that they should not be put under an obligation to indemnify a third person by an act to which they do not

agree": *Insurance Co. of Pennsylvania v. Phoenix Insurance Co.,* 71 Pa. 31, 35.

The second right of which defendant would be deprived is that of dealing exclusively with the named insured, negotiating with them a settlement, and obtaining from them a release of its obligations under the policy,—all without the necessity of recognizing the alleged interest of any third persons of whom it had no knowledge and to whom it never intended to assume, and in fact did not assume, any obligation.

This litigation, of course, does not call for a determination of the rights of plaintiffs against their lessee. As far as defendant Insurance Company is concerned, their sole right is to maintain a suit in equity, as in *Dubin Paper Co. v. Insurance Co. of North America,* 361 Pa. 68, 63 A. 2d 85, whereby any cause of action that may exist in favor of plaintiffs against their lessee under the lease, and any cause of action that may exist in favor of the latter and her partner against the Insurance Company under the policy, can be adjudicated independently of one another and each on its own merits.

Order dismissing the complaint affirmed.

———

CONCURRING OPINION BY MR. CHIEF JUSTICE MAXEY:

I agree with the majority opinion that the complaint does not set forth a cause of action against defendant. No man has any cause of action against another unless that other is obligated to him. An obligation must be imposed either by law or by contract. The law imposes no obligation on anyone to insure another in the absence of an agreement to do so. The question is: Did the Hanover Fire Insurance Company obligate itself by an insurance contract with the plaintiffs? If such a relationship existed between plaintiffs and defendant it must have had its origin in an insurance contract. The policy

of insurance which is pleaded says nothing about defendant being obligated to plaintiffs in any way. The complaint avers that "M. E. Kaehler and Louis A. Raub [lessees] agreed that they would keep the buildings belonging to the plaintiffs herein on the premises described in Paragraph 3 above insured against loss by fire, . . ." and that "The said M. E. Kaehler and Louis A. Raub carried a policy of fire insurance with the defendant on the hangar and offices located on the land of the plaintiffs herein." It was averred (Par. 12) that "The insurance carried with the defendant herein was carried for the benefit of . . . the plaintiffs herein." This is stating a mere conclusion of law and no facts are pleaded in support of it. Nothing is pleaded which shows any legal relationship between the plaintiffs and the defendant. Even *if* when Kaehler and Raub executed the insurance policy with the defendant they regarded themselves as agents of Spires and his wife, but that fact had not been disclosed to the insurance company, the company would not be obligated to those undisclosed principals. If A and X entered into an agreement to marry and later A informed X that in entering into the contract he, A, was merely acting for B, a theretofore undisclosed principal, X would certainly be under no obligation to marry B.

A contract of insurance is as much a personal one as is a contract to marry.* An insurer is concerned with the moral risk as well as with the material risk involved in an insurance contract. A fire insurance company will not insure a man's property if the man has had too many fires. A casualty company will not insure a car owner if the owner has had too many accidents. An insurance company cannot be forced to enter into a contractual relationship with anybody.

---

* Mr. Justice DREW, speaking for this Court, said in *Gorman's Estate*, 321 Pa. 292, 295, 184 A. 86: "A fire insurance policy is a personal contract. An important feature of such indemnity is the personal equation that exists between insurer and insured."

3 C. J. S., §276, states: ". . . in view of the fact that mutual assent is an essential element of a contract, every person has a right to determine with whom he will be bound by contract and cannot have another person thrust upon him against his expressed will. Therefore, where it is clearly shown, either from the terms of the agreement or the attendant circumstances, that the contract was exclusively with the agent personally, the principal does not become a party thereto and cannot maintain a suit upon it." (Citing cases.)

2 American Jurisprudence, Section 412, says: "Where the contract made by an agent acting for an undisclosed principal involves elements of personal trust and confidence as a consideration moving from the agent, contracting in his own name, to the other party to the contract, the principal, while the contract remains executory, cannot, against the resistance of the other party, enforce it, either to compel performance by the other party or to recover damages for a breach."

In *Birmingham Matinee Club v. McCarty*, 152 Ala. 571, 44 So. 642, 13 L. R. A. (N. S.) 156, the court said: ". . . if the contract involes elements of personal trust and confidence, as a consideration moving from the agent (of the undisclosed principal), contracting in his own name, to the other party to the contract, the principal, while it remains executory, cannot, against the resistance of the other party enforce it, either to compel performance by the other party, or in damages for a breach. Mechem on Agency, §770; King v. Batterson, 13 R. I. 117, 43 Am. Rep. 13; Boston Ice Co. v. Potter, 123 Mass. 28, 25 Am. Rep. 9; Winchester v. Howard, 97 Mass. 303, 93 Am. Dec. 93; 1 Am. & Eng. Enc. Law, pp. 1171, 1172, and notes; Story on Agency, §§160, et seq. and notes. The reason for this exception is manifest. If the party contracting without knowledge of the agency, were bound to take the service or conveyance or property from the undisclosed principal, the well-recognized rule that one

may determine for himself with whom he will deal, with whom he will contract would be directly infracted; and the elements of the contract reasonably attributable to personal confidence and trust, including the financial responsibility of the agent, with whom he alone deals as principal, would be stricken of force to which under all principles of substantial justice and right the relying party is entitled to the benefit. Of course, it follows that for a failure or refusal, by the party dealing with the agent, to perform the contract, which was in reality, but unknown to be, the undertaking of an undisclosed principal, and not the undertaking of the individual with whom made, the recalcitrant party, cannot be mulcted in damages by the developed principal."

He who pleads an obligation arising from a contract must show the obligor's assent to the assumption of the obligation. The Hanover Fire Insurance Company never assented to the insuring of these plaintiffs against any loss of property by fire, nor did it in its contract of insurance accept them as creditor beneficiaries. Every insurance company has freedom of choice as to the persons to whom it will be obligated. If, for example, A wished to borrow $10,000 from X and X said, "I will loan you the money provided you take out a policy of life insurance," and A did so, making his estate the beneficiary, and then died, X the creditor would have no right of action against the insurance company. He would have a right of action only against A's estate, of which the insurance proceeds constituted a part. If A said to the insurance company: "I wish it stipulated in the policy that the proceeds be paid to X, my creditor" and the policy contained this stipulation the creditor would after A's death have a right of action against the insurance company for the proceeds.

Williston on Contracts, Volume 2, Section 369, in discussing the third party beneficiary and creditor rules as applied to *life* insurance cases, says: "Presumably

everywhere a beneficiary *to whom the insurer has promised the insured* that the insurance money shall be paid is given a right to enforce the policy, and generally by a direct action." (Italics supplied.) (The same rule applies to *fire* insurance policies.)

In *Hind v. Holdship,* 2 Watts 104, this Court said: ". . . he for whose benefit a promise is made may maintain an action upon it, although no consideration pass from him to the defendant, nor any promise from the defendant directly to the plaintiff."

Williston on Contracts, Volume I, Section 22, page 43, says: "Not only must assent to a contract be manifested by overt acts, but promises in contracts must be made by a manifestation of agreement moving from the promisor to the promisee." See also Volume 2, Section 357.

*Lightner's Appeal,* 82 Pa. 301, has no bearing on this case. The facts in that case were that H., being indebted to his bank in a sum larger than the value of some stock which he owned in that bank, when required to give additional security agreed with the bank that he would transfer his stock in the bank as collateral security for his indebtedness, and a power of attorney was accordingly drawn for that purpose, in which H., for value received, irrevocably appointed E., the cashier of the bank, his attorney, to transfer to the bank or other persons his stock. E. died before he had executed the power, and the stock still remained upon the books of the company in H.'s name, when H. became a bankrupt, and his assignee in bankruptcy filed a bill to prevent the bank disposing of the stock. It was held that the power of attorney did not fall by reason of the death of E., the attorney named therein, and that the power was not only irrevocable by its own terms, but it was so by the legal operation of the agreement which induced it. It was a power coupled with an interest, and the agreement operated as an assignment of the stock in equity,

which the power was intended to perfect. H. had agreed to transfer his stock and he provided the mechanism for the transfer. The transfer was not allowed to fail just because the transfer mechanism failed (upon the death of the attorney-in-fact, who was authorized to effect the transfer).

Procedural Rule 2002 has no relevancy as to whether or not these plaintiffs have any substantive right against the Hanover Insurance Company. Rule 2002 does not purport to affect the substantive rights of anybody. If it did it would be invalid because the Act of 1937, P. L. 1982, which authorized the Supreme Court to prescribe rules of practice and procedure in civil actions in law and in equity provides as follows: ". . . such rules shall be consistent with the Constitution of this Commonwealth and shall *neither abridge, enlarge nor modify the substantive rights of any litigant* nor the jurisdiction of any of the said courts, nor affect any statute of limitations." (Italics supplied.) No substantive right has its source in a rule of procedure.

The court below correctly held that these plaintiffs were neither donee beneficiaries nor creditor beneficiaries. See Restatement of the Law of Contracts, 133, et seq. Even if they were incidental beneficiaries (which they were not) that status would not give them any right of action against the insurance company. In illustrating incidental beneficiaries Volume 1 of the Restatement of the Law of Contracts, under Section 133, uses the following illustration in paragraph 13 (page 156) : "A, an insurance company, promises B in a policy of insurance to pay $10,000 on B's death to C, as trustee for B's wife, D. C, and not D, is a donee beneficiary. D's rights must be enforced under the trust."

Judge LAUB of the court below correctly decided this case when he said: "The question is whether, by the terms of the contract itself, the contracting parties have provided that the performance by the promisor, or a

part of it, when rendered, is to go to the third party and not to the promisee. Paragraph 12 of the complaint is insufficient to establish this policy as such a contract. Since the complaint does not aver that the policy required the defendant to make payment to the plaintiffs, the complaint does not establish the contract sued upon as a third-party contract."

In other words, since under the terms of the insurance contract between the *lessees* and the defendant company, the company assumed no obligations whatsoever in respect to the *lessors,* it follows that the lessors being strangers to *that* contract cannot base upon it any right of action against the insurance company. The lessors' right of action is against lessees *on the contract between lessors and lessees, by which contract the insurance company, being a total stranger to it, is in no way obligated.*

---

DISSENTING OPINION BY MR. JUSTICE LINN:

The complaint is sufficient, in my judgment, to require an answer, and states a case in which the defendant should wish to state why it refuses to pay. The charge is that the defendant received the regular premium; that it insured against damage to plaintiff's property, (Hangar No. 1 in the sum of $17,500)[1] and, after the fire settled with two beneficiaries, the tenant and the chattel mortgagee, but refused to settle with plaintiffs, owner of the hangar. Why? The complaint discloses that the tenant, the named insured, declined to file a

---

[1] Under a printed direction on the policy form stating, "Insert here number of apartments and/or number of roomers or boarders" the policy contains the following: "Item 1. $17,500. On the One story Skeleton Steel building with metal roof, occupied for office—class rooms and administrative or other purposes not more hazardous. Known as Hangar No. 1."

proof of loss on account of Hangar No. 1. No fraud or other reason appears why defendant should not pay or at least state its defense, if any. The settled rule, the rule which I think should be applied, is that summary judgment will not be granted unless a case is clear; if a case is not clear, the parties must have opportunity to develop the facts at trial: *Ottman et al v. Nixon-Nirdlinger et al.,* 301 Pa. 234, 243-244, 151 A. 879 (1930); *Smith v. Brockway Motor Truck Corp.,* 302 Pa. 217, 219-220, 153 A. 333 (1931). .

This summary judgment seems to be put on various grounds: (1) it is said the plaintiff is not named in the policy. The opinion states: "The first [reason] is that their [plaintiffs] contention that the insurance was carried primarily for their benefit is unwarranted." The complaint averred: "19. The insurance carried with the defendant herein on Hangar No. One and the offices therein was carried by the said M. E. Kaehler and Louis A. Raub for the benefit of the land owner, H. J. C. Spires and Alta Spires, his wife, the plaintiffs herein." The allegation is that the tenants were under a contractual duty to insure for the lessor's benefit; and that they did insure the premises. Where one has agreed to perform a particular act, his performance of that act will be presumed to have been done pursuant to that agreement: cf. *Lightner's Appeal,* 82 Pa. 301, 304 (1876). The pleaded facts therefore support the conclusion that the insurance was for the account of plaintiffs as fully as if the policy had said, "for the account of whom it may concern." On proof of the facts averred, the jury would be justified in finding that, in obtaining this insurance on the Hangar, the tenants acted as agents for their lessors as undisclosed principals. It is not essential that plaintiffs characterize the relation in their complaint, or aver, in so many words, that agency existed, if, in fact,

the averments support a finding of such relation. The law has not excepted insurance [2] contracts from the rules of agency. In *Miltenberger v. Beacom,* 9 Pa. 198 (1848), this Court said that the contract of insurance, "like other contracts, may be effected by the agency of a third person, without the authority of the party to be benefited, if he subsequently recognize it." An insurance company may of course provide against liability to an undisclosed principal by requiring sole and unconditional ownership by the insured but the policy in suit did not so provide: compare *Schloss v. Importers & Exporters Ins. Co.,* 83 Pa. Superior Ct. 426 (1924); *Penna. Fire Ins. Co. v. Dougherty,* 102 Pa. 568 (1883); *Livingstone v. Boston Ins. Co.,* 255 Pa. 1, 99 A. 212 (1916); *The Millville Mutual Fire Ins. Co. v. Wilgus,* 88 Pa. 107 (1878); *Franklin Fire Ins. Co. v. Shadid,* 68 S. W. 2d 1030 (Tex. 1934). In *Insurance Co. of Pa. v. Smith,* 3 Wharton 520 (1838) the company recovered its premium from an undisclosed principal. In *Isaac et al. v. Donegal and Conoy Mut. Fire Ins. Co.,* 308 Pa. 439, 162 A. 300 (1932) it appeared that the policy covered the property of three persons but part of it was owned by one of them individually. The sub-agent of the insurance company knew of the title to the property and was held to have waived the sole and unconditional ownership requirement.

2. I must also differ from the decision that plaintiffs are not the real parties in interest within Procedural Rule 2002. Being remedial, it should receive a liberal

[2] Insurance in modern times in this Commonwealth is a matter of general public concern and is regulated by "The Insurance Company Law of 1921," Act of May 17, 1921, P. L. 682, 40 PS 341 et seq. as amended and by The Insurance Department Act of May 17, 1921, P. L. 789 as amended, 40 PS 1 et seq.

interpretation.[3] It provides that "all actions shall be prosecuted by and in the name of the real party in interest . . ." The tenants agreed to return the leased property at the end of the term and to keep it (not merely their interest in it) insured. It was so insured, as they aver, for their benefit. The tenants, who were named in the policy, held the legal title to the chose in action (the protection afforded by the policy) while part of the beneficial interest in the insurance was in plaintiffs; the relation of trustee and beneficiary existed. As the defendant has settled by satisfying its obligation to the tenant and to the chattel mortgagee, two of the three beneficiaries, the only unsatisfied policy obligation is that owing to the plaintiffs; as the only party now interested, they have the right to discharge that obligation and are therefore the real parties in interest within the meaning of Rule 2002; *Kusmaul v. Stull et al.*, 356 Pa. 276, 51 A. 2d 602 (1947).

A variety of comparable situations have been considered which would now fall directly within the real party in interest rule. In *Gardner v. Freystown Mut. Fire Ins. Co.*, 350 Pa. 1, 37 A. 2d 535 (1944), we held that Rule 2002, Pa. R. C. P., allowed a bailee to sue in his own name although the bailor was also beneficially interested in the fund: This Court said, ". . . where the

---

[3] Such an interpretation of the term "real party" was indicated by Mr. Justice STERN in *Badger v. Upper Darby Twp.*, 348 Pa. 551, 555, 36 A. 2d 507 (1944), where he said, "If, as would appear, the insurance company is the real party in interest, a decision denying plaintiff the right to prosecute her claim because of failure to give written notice to the township would be one of sheer literalism, for, had such notice been given, the township would undoubtedly, in due course, have turned it over to the company to which plaintiff's counsel had sent it in the first instance. It is not unusual for lawyers representing claimants in accident cases to communicate with insurance companies directly rather than with defendants, since the former control the negotiations for settlement and prepare the defense in case of litigation."

contract of bailment provides that the bailee shall insure the goods while in his possession, either bailee or bailor may maintain an action against the insurer on the policy for the full amount of the loss occasioned (citing cases)." See also *Roberts v. Firemen's Ins. Co.*, 165 Pa. 55, 30 A. 450 (1894) ; *B. N. Exton & Co., Inc., v. Home Fire & Marine Ins. Co.*, 249 N. Y. 258, 164 N. E. 43 (1928). The relation of tenant and remainderman was considered in *Welsh v. London Assurance Corp.*, 151 Pa. 607, 25 A. 142 (1892). In *Pearson Mfg. Co. v. Pittsburgh Steamboat Co.*, 309 Pa. 340, 163 A. 680 (1932), a mortgagor-mortgagee relationship was considered. See also *Peoples Street Ry. Co. v. Spencer*, 156 Pa. 85, 27 A. 113 (1893).

3. The majority opinion proceeds on the theory that plaintiffs cannot recover because not named in the policy. It is not disputed that if the tenants obtained judgment on the policy the plaintiffs could enforce an equitable lien on the proceeds as held in trust.[4] That equitable right does not exclude the remedy at law. Where a named insured owes a contractual duty to an unnamed beneficiary to sue for and collect insurance, the unnamed beneficiary, as the real party in interest, may give notice to the company of his claim, pursuant to which the company may either defend against it or interplead the parties; the law should not permit the company to gain any advantage by the named insured's default. If the tenants recovered the proceeds they would hold them in trust for the plaintiffs who were beneficiaries under the policy. The trustee, with no active duties to perform, became the trustee of a dry or self-executing trust; in such case, the beneficiary may ignore the trustee and

---

[4] *Pearson Mfg. Co. v. Pittsburgh Steamboat Co.*, 309 Pa. 340, 344, 163 A. 680, 94 A. L. R. 1382, note p. 1387 (1932) ; *Peoples Street Ry. Co. v. Spencer*, 156 Pa. 85, 27 A. 113 (1893) ; *Ins. Co. of Pa. v. Phoenix Ins. Co.*, 71 Pa. 31 ; 92 A. L. R. 559 ; 21 A. L. R. 1460.

sue in his own name: *Cable v. Cable,* 146 Pa. 451, 23 A. 223 (1891); *Wescott v. Edmunds,* 68 Pa. 34 (1871). In the Westcott case, at pages 36-7, AGNEW, J., stated, "It is very clear that the active duties of the trust under this will ceased at the death of Catherine Hance, the life-tenant under the trust; and after that there remained no further duty to be executed by the trustee, but to convey the estate to the persons in remainder. But this, it has been decided, does not continue the trust, the law, in this state, executing the legal title in the remaindermen without the formality of a conveyance. It is true, that decrees have been made in such cases compelling trustees to convey to the person in remainder or to married women after coverture had ceased; but it is said this was merely to remove the cloud from the title arising from the apparent trust. Whatever might have been the impression as to the necessity of such a decree, it is now clearly settled by authoritative decision that the legal estate vests without a conveyance: [citing cases]."

I think the real party in interest rule was intended to render unnecessary the complex remedy suggested by the majority to the effect that the plaintiff proceed in equity against the tenant and the insurance company. It is because the plaintiffs *are* the real parties in interest that the tenants, who have been paid, are now indifferent to the result. There is only one issue, whether defendant should pay the insurance for which it collected the premium and that issue is remediable at law without resort to the equity side of the court.

I would reverse the judgment and require the insurance company to file its answer.

Mr. Justice PATTERSON and Mr. Justice ALLEN M. STEARNE concur in this opinion.