## International Brotherhood of Electrical Workers v. Warfel Associates, Inc.

*Marshall M. Cohen*, for plaintiff.

*Appel, Ranck, Levy & Appel*, for defendants.

BURKHOLDER, J., December 9, 1955.—Wyeth Company, Inc., owner, is building an addition to its build-

ings near Marietta in East Donegal Township, Lancaster County, to be used in the production of Salk vaccine. This action arises under the building contract for this addition executed early in 1955. On May 24th plaintiff, an unincorporated labor union, filed its complaint in equity against the two defendants to enjoin them from using nonunion labor on this project. The two defendants filed preliminary objections to the complaint.

According to the complaint, the contract for the erection of this addition between the owner and defendant, D. S. Warfel Associates, Inc., Warfel, contained the following provisions:

"Article 22—Labor.

"Only union labor shall be employed on this work. All labor shall be employed in full compliance with State and Federal laws in effect as of date of contract and/or as subsequently revised.

"(a) Contractor agrees that in carrying out the provisions of this contract, only union labor in good standing in the community in which the work is to be performed, will be employed by the Contractor and by his subcontractors.

"(b) From the date of this contract until final completion of the work, the Contractor and his subcontractors shall maintain themselves in good standing with the applicable unions.

"(c) Should sufficient union labor be unavailable in the communtiy where the job is to be performed, the Contractor and his subcontractors shall have the right, with the consent of the applicable union or unions, to employ any labor necessary to complete the job.

"(d) Should the Contractor or any subcontractor fail to carry out the provisions of Sections A and B of this paragraph and if, as a result thereof, the Contractor or subcontractor become involved in labor difficul-

ties which in the opinion of the Owner would adversely affect the Owner, the Owner reserves and shall have the right, without liability, to terminate the contract forthwith, without thereby affecting any other rights or remedies which the Owner may have by reason of such failure of the Contractor or any subcontractor."

Warfel in turn entered into a contract for the electrical work with defendant, Martin Electrical Service, which also contained the provisions of article 22. Martin employed nonunion helpers and workmen in alleged violation of these provisions. Plaintiff is the only organization representing unionized electrical construction workers in Lancaster County. These are the averments of the complaint, all of which must be taken as true for the purpose of this opinion.

Both Warfel and Martin in their preliminary objections maintain among other things that plaintiff does not have a right of action on either of these two contracts because plaintiff is not the kind of third party beneficiary that is entitled to enforce them. Plaintiff maintains the opposite point of view. In our view of this case, this is the only question to be decided.

No case in Pennsylvania has been brought to the attention of the court by counsel for any of the parties, in which a labor union as a third party beneficiary has sought to enforce provisions like article 22. Judge Herbert F. Goodrich of the United States Court of Appeals, Third Circuit, in the case of Isbrandtsen Co., Inc., v. Local 1291 of International Longshoremen's Assn., 204 F. 2d 495 (1953), summarized the law relating to the right to enforce a contract by one not a party to it, as follows, pages 496 and 497:

"The question of determining what rights one who is not a party to a contract has in its performance is one which is not free from difficulty. As Professor Williston points out, the first recognition of such rights

was in the cases now called the donee beneficiary type. Here the courts protected the interest of the person for whose benefit the performance was intended to prevent a failure of justice. The party to the contract would have no action for its breach except for nominal damages since he was not the one who suffered by the promisor's default. If the beneficiary could not sue there could be no adequate recovery even though the breach was established. The next extension was made, with hesitancy on the part of some courts, to the creditor beneficiary situation. '[T]hrough this travail,' in Mr. Williston's words, "the common law has given birth to a distinct, new principle of law which takes its own place in the family of legal principles, and gives not only to a donee beneficiary, but also to a creditor beneficiary, the right to enforce directly the promise from which he derives his interest.'

"So we have the classification of donee beneficiary, creditor beneficiary and incidental beneficiary, a classification discussed in the works of both Williston and Corbin and used in the Restatement. As Mr. Corbin says, the description of the term 'incidental beneficiary' to describe one 'whose relation to the contracting parties is such that the courts will not recognize any legal right in him' is not particularly helpful 'for the problem of the courts is to determine what kinds of claimants asserting themselves to be beneficiaries have rights and what kinds have not.'

"Corbin goes on to describe what constitutes a creditor beneficiary and what constitutes a donee beneficiary. He says: 'If in buying the promise the promisee expresses an intent that some third party shall receive either the security of the executory promise or the benefit of performance as a gift, that party is a donee of either the contract right or of the promised performance or both. If, on the other hand, the promisee's

expressed intent is that some third party shall receive the performance in satisfaction and discharge of some actual or supposed duty or liability of the promisee, the third party is a creditor beneficiary. All others who may in some way be benefited by performance have no rights and are called incidental beneficiaries.' "

The A. L. I. Restatement of the Law of Contracts in section 133 follows the definition of Mr. Corbin. There are many cases in Pennsylvania illustrating the application of these principles but it would be fruitless to discuss them separately.

In Mowrer v. Poirier and McLane Corp., 382 Pa. 2 114 A. 2d 88 (1955), both the majority opinion and the dissenting opinion cite section 133 of the Restatement Contract with approval. The majority opinion also cites with approval the earlier case of Spires v. Hanover Fire Insurance Co., 364 Pa. 52, 70 A. 2d 828 (1950), where it was held that: "To be a third party beneficiary entitled to recover on a contract . . . both parties to the contract must so intend and must indicate that intention in the contract; in other words, a promisor cannot be held liable to an alleged beneficiary of a contract unless the latter was within his contemplation at the time the contract was entered into and such liability was intentionally assumed by him in his undertaking; the obligation to the third party must be created, and must affirmatively appear, in the contract itself: . . ." The dissenting opinion which also cites this case says that "in reality it is *the purpose of the promisee* who extracts the promise for the benefit of the third party that is controlling."

The difficulty with the cases involving third party beneficiaries is not in defining the terms but in applying the definition to the particular facts in a given case. Fortunately, the case at bar does not present any great difficulty in this respect. Here plaintiff is

relying on the provisions of article 22 of the contract between the owner and Warfel which in turn was incorporated into the contract between Warfel and the subcontractor, Martin. It specifies that "only union labor in good standing in the community . . . [is to] be employed by the contractor [Warfel] and by his subcontractors [Martin]" and then continues in sub-paragraph (*d*):

"Should the Contractor or any subcontractor fail to carry out the provisions of Sections A and B of this paragraph and if, as a result thereof, the Contractor or subcontractor become involved in labor difficulties which in the opinion of the Owner would adversely affect the Owner, the Owner reserves and shall have the right, without liability, to terminate the contract forthwith, without thereby affecting any other rights or remedies which the Owner may have by reason of such failure of the Contractor or any subcontractor.

The language of this sub-paragraph is extremely important. It reserves to the owner the special right "to terminate the contract forthwith" only in case union labor is not employed "*and if, as a result thereof, the contractor or subcontractor [should] become involved in labor difficulties which in the opinion of the Owner would adversely affect the Owner.*" (Italics supplied). This provision of the contract makes it abundantly clear that the intention of the parties was not to protect plaintiff labor union or any other labor union but simply to protect the owner against "labor difficulties which . . . would adversely affect the owner."

As was said in the Isbrandtsen case "the whole setting of this fact situation as described in the complaint . . . is one which completely negatives a gift transaction under any possible interpretation of that term". Article 22 of the contract between the owner and

Warfel contains provisions frequently incorporated into building contracts for the protection of the owner. By its words it reserves to the owner *and to no one else* the remedy in case of a violation. It states clearly that the owner is the one to be protected. Had the situation been otherwise the parties very easily could have inserted a clause stating that article 22 was inserted for the benefit of the labor unions in the community, representing the kinds of labor required to complete the contract and that the contract should be so construed.

Nothing appears in the complaint and indeed at the argument of the case nothing was said indicating that plaintiff was a creditor beneficiary.

The law in Pennsylvania at the present time undoubtedly is that enunciated in the Mowrer case, quoting from the Spires case, that: "To be a third party beneficiary entitled to recover on a contract . . . both parties to the contract must so . . . indicate . . . in the contract." This was not done in the case at bar. Accordingly, it is unnecessary to consider the other objections raised by defendants.

And now, December 9, 1955, defendants' objections to plaintiff's complaint are sustained and the complaint is dismissed at the cost of plaintiff.