## Bank v. Angelatos

*Arthur R. Sagoskin,* for plaintiffs.

*William J. Schmidt,* for defendant, National Union Fire Insurance Company.

BIEHN, *P.J.,* September 5, 1993—This matter is before the court on the cross-motions for summary judgment filed by defendant, National Union Fire Insurance Company, and plaintiffs, Louis Bank, Herman Bank, Kenneth Bank, Ruth Bank, Sol K. Spector and the estate of Ralph Slobotkin. Oral argument was held on July 15, 1993. After consideration of the parties' motions,

briefs and arguments, we now enter summary judgment in favor of plaintiffs.

Plaintiffs and defendant entered into an agreement to file cross-motions for summary judgment. In support of their motions, the parties also filed a stipulated record and a stipulation of facts. The facts, as set forth below, have been taken by this court from the parties' stipulation.

## FACTS

(1) At all times relevant to this litigation, including the period from August 10, 1981 through April 11, 1982, plaintiffs Herman Bank, Kenneth Bank, Ruth Bank, Sol K. Spector and the estate of Ralph Slobotkin were the owners of real estate located at 851 New Rodgers Road, Bristol, Pennsylvania.

(2) Prior to August 10, 1981, plaintiffs retained Albert M. Greenfield & Company Inc. to act as their agent to secure a tenant for the premises at 851 New Rodgers Road.

(3) On August 10, 1981, Louis Bank, as agent for the owners, leased the premises at 851 New Rodgers Road to Elena Angelatos for a period of five years.

(4) Elena Angelatos signed the lease in her individual capacity.

(5) While Elena Angelatos signed the lease in her individual capacity, she did so with the understanding that a corporation would be formed in which she would be an officer and which would run a restaurant from the leased premises.

(6) A corporation was formed to run the restaurant; Stargate Diner Inc. was a Pennsylvania corporation which operated Stargate Diner Restaurant from the premises at 851 New Rodgers Road.

(7) Elena Angelatos and James Moussouris were the owners of all the outstanding stock interest and title of Stargate Diner Inc.

(8) David Bank, an employee of Greenfield on August 10, 1981, told Moussouris that he (Moussouris) was responsible for obtaining fire insurance for the restaurant.

(9) Louis Bank, agent for the owners, believed that Greenfield was responsible for obtaining fire insurance on the property.

(10) According to David Bank, Greenfield did not manage the property and was not responsible for obtaining insurance.

(11) An insurance policy was issued by American Insurance Company [Firemen's Fund] for the premises at 851 New Rodgers Road. The policy named Stargate Diner-Restaurant Inc. as insured for the period August 7, 1981 through August 7, 1982.

(12) The original Firemen's Fund policy did not name plaintiffs in any manner and did not reflect any interest in the property at 851 New Rodgers Road except for the interest of Stargate Diner-Restaurant Inc.

(13) An insurance binder, issued through Sylvester & Keating Inc. on August 6, 1981, did not show any interest in the property other than the interest of the named insured.

(14) A revised insurance binder was issued through Sylvester & Keating Inc. on August 18, 1981, listing Louis Bank, agent owner as loss payee and Greenfield Company Inc. as agent for the property.

(15) Two endorsements were added to the Fireman's Fund policy. Sequential endorsement no. 1, effective August 11, 1981, added Louis Bank-agent and Greenfield Company A.T.I.M.A. as loss payees. Sequential endorsement no. 3, effective October 5, 1981, added Kenneth Bank, Herman Bank, Ruth Bank, Sol K. Spector, Yetta Slobotkin and Hillel Handloff c/o Louis Bank, agent as loss payees and additional insureds.

(16) A notice of cancellation for the Fireman's Fund policy was mailed on January 20, 1982 to Stargate Diner-Restaurant, Louis Bank Agency [sic] and Greenfield Company.

(17) The Fireman's Fund policy was canceled on February 24, 1982 for non-payment of premium.

(18) In February 1981, Moussouris asked Roger Gindin, an owner of Gindin Insurance Agency to provide him with a quote for insurance coverage.

(19) Gindin agreed and met with Moussouris on February 22, 1982 for the purpose of filling out an insurance application.

(20) Roger Gindin would testify that Moussouris gave him a copy of the original Fireman's Fund policy at their meeting on February 22, 1982.

(21) Moussouris would testify that he gave Roger Gindin a copy of the lease and other papers at their meeting on February 22, 1982.

(22) Roger Gindin would testify that he filled out a commercial insurance application based on the Fireman's Fund policy and an interview with Moussouris.

(23) Roger Gindin would testify that he did not review the revised insurance binder (August 18, 1981) on February 22, 1982 or at any time before the fire of April 11, 1982.

(24) Roger Gindin would testify that the Fireman's Fund insurance policy given to him did not contain sequential endorsements no. 1 and no. 3, did not mention plaintiffs' ownership interest and did not list any loss payees.

(25) Roger Gindin would testify that he did not learn about the August 10, 1981 lease until after the fire of April 11, 1982.

(26) Roger Gindin would testify that on February 22, 1982, Moussouris told him that Stargate Diner Inc. was the owner of the land and building located at 851 New Rodgers Road.

(27) Roger Gindin would testify that he did not learn of plaintiffs' ownership interest until after the fire of April 11, 1982.

(28) On February 22, 1982, a commercial insurance application was filled out and completed in the handwriting of Roger Gindin. In the space on the application form designated "location information" the address of the premises was filled in and in the designated box labeled "interest," "owner" was written in by Roger Gindin. Roger Gindin would testify that the commercial insurance application was filled out in the presence of Moussouris.

(29) The commercial insurance application was sent by Gindin to Johnson Excess Limited by letter of March 1, 1982.

(30) Johnson submitted the commercial insurance application to defendant, National Union Fire Insurance Company of Pittsburgh, Pennsylvania, and defendant issued policy no. FBP 981 52 91, with a policy period from March 8, 1982 through March 8, 1983, listing Stargate Diner Restaurant Inc. as the named insured.

(31) At the time the National policy was issued, Johnson was the agent of defendant.

(32) Johnson did not perform an inspection of the property or a background check on the insureds prior to the issuance of the National policy.

(33) After the National policy was issued, Johnson retained O'Hanlon Reports Inc. to perform an inspection of the property. O'Hanlon completed the inspection on April 1, 1982 and issued a report.

(34) Defendant required a property and liability inspection as part of the procedure to insure the subject property.

(35) The inspection ordered by Johnson did not include a search to verify and/or confirm the record owners of the premises, nor are there any steps routinely taken by Johnson to verify and confirm the record owners.

(36) Gindin, defendant and Johnson all acknowledge that when insurance policies are issued for premises, a records search or inspection to determine the record title owners is not done.

(37) Johnson, after the issuance of the National policy and after an inspection of the subject premises, could have canceled the policy on behalf of defendant if the inspection revealed the premises to be an unacceptable risk.

(38) An underwriter employed by defendant has testified that the only reason to know the true owner of a property is to make sure that payment is made to the appropriate person in the event of a claim.

(39) The same underwriter testified that, regardless of the actual ownership of the real property, the ownership of the property does not impact upon the risk undertaken and that ownership should be ascertained only to make sure that the appropriate person is paid in the event of a claim.

(40) Defendant knew of no facts about the true owners of the property that would have made them undesirable risks for insurance.

(41) The National policy did not specifically name plaintiffs in any manner and did not specifically reflect the interest of any person or entity except the named insured.

(42) On, April 11, 1982, a fire of incendiary origin damaged the restaurant.

(43) Moussouris, Angelatos and Stargate Diner Inc. retained a public adjuster, Stephen R. Figlin, to represent their interests.

(44) Harriett Gindin, an owner of Gindin Insurance Agency, would testify that on the day after the fire Moussouris confirmed that Stargate Diner Inc. was the owner of the property.

(45) Harriett Gindin would testify that she met with Moussouris and Angelatos after the fire and did not

know of plaintiffs' ownership interest or the August 10, 1981 lease until days after the fire.

(46) On April 19, 1982, an agreement was executed whereby Moussouris, Angelatos and Stargate Diner Inc. promised to pay any proceeds obtained from the insurance policy to plaintiffs.

(47) Defendant conducted an examination under oath of Moussouris, pursuant to the insurance policy, on June 22, 1982.

(48) Stargate Diner Restaurant Inc., by and through its public adjuster, Stephen R. Figlin, submitted two sworn statements in proof of loss to defendant. The first, dated May 24, 1982, was rejected as non-conforming by letter of September 27, 1982. The second, dated October 14, 1982, was accepted. Thereafter, the claim was denied by letter of December 15, 1982.

(49) The National policy was canceled effective July 27, 1982 and the stated reason in the notice was failure to pay premiums.

(50) In canceling the policy, defendant credited an amount to the account of the insured.

(51) Plaintiffs filed their complaint in February 1983. Defendant filed preliminary objections to the complaint which were denied by order of August 17, 1983.

(52) Defendant filed a motion for summary judgment which was also denied.

(53) Plaintiffs have taken a default against Elena Angelatos and James Moussouris. Plaintiffs have settled with Gindin and Greenfield and have dismissed their complaint against Figlin.

(54) Elena Angelatos is deceased and James Moussouris filed for bankruptcy.

(55) Plaintiffs sold the property at 851 New Rodgers Road in November 1982 for $50,000.

(56) Plaintiffs and defendant agree that the amount of damages, including interest, costs and attorney's fees,

is $175,000. The parties to this litigation stipulate to that damage figure.

## DISCUSSION

The sole issue before this court is whether or not defendant may refuse to pay the proceeds of the insurance policy because plaintiffs were not specifically named on that policy. We now find that defendant is legally obligated to pay the proceeds based on the stipulated facts and record.

Defendant has reduced its argument to three main points: 1) a fire insurance policy is personal; 2) plaintiffs are not third party beneficiaries; and 3) defendant had no duty to do a record search.

A review of the case law in this area reveals the following. In the seminal case of *Spires v. Hanover Fire Insurance Company*, 364 Pa. 52, 70 A.2d 828 (1950), our Supreme Court addressed the issue of whether the plaintiffs could recover on a fire insurance policy in which they were not named as parties and in which they were not referred to in any manner whatsoever. The court stated:

"... A policy of fire insurance is a personal contract of indemnity against such loss as the *insured* may sustain; the insurance is not of the property as such, but of the *interest of the insured in* the property....

"The other reason why plaintiffs cannot recover on the policy is because, whatever incidental interest they may have had therein, and even if, *as between them and the lessee,* they were meant to be a beneficiary thereof, they are not referred to in the *policy itself* as an intended beneficiary; indeed it does not appear that the insurance company ever knew of the lease from plaintiffs to [the insured], or even that any such persons

as plaintiffs existed. To be a third party beneficiary entitled to recover on a contract it is not enough that it be intended by *one* of the parties to the contract and the *third person* that the latter should be a beneficiary, but *both parties to the contract* must so intend and must indicate that intention in the contract; in other words, a promisor cannot be held liable to an alleged beneficiary of a contract unless the latter was within his contemplation at the time the contract was entered into and such liability was intentionally assumed by him in his undertaking; the obligation to the third party must be created, and must affirmatively appear, in the contract itself. The fact, therefore, that plaintiffs would be incidentally benefited would not give them a right to recover on the policy by virtue of any arrangement between them and [the insured] where the insurance company assumed no obligation to them in the policy but believed itself to be insuring only the interest of the persons named therein....

"As stated in the beginning of this opinion, the issue under discussion is not merely a procedural one. The real question is whether plaintiffs have a *substantive* cause of action against defendant. If it were to be held that such a cause of action existed the insurance company would be deprived thereby of two fundamental rights. One such right is its privilege to choose the person to whom it is willing to issue an insurance policy. 'The safety of the insurer is dependent much upon the character of the assured, not alone upon his integrity and good faith, but upon his habits of carefulness, of prudence, and vigilance. It is obvious that the danger of fire may be much less when the assured is a man watchful and provident than where he is heedless and negligent, as well as dishonest.' 'A man who contracts with one person may well refuse to permit another to become a party to the agreement. This is peculiarly

true when the relation is one of trust and confidence, which is necessarily the case between the insurers and the insured. The former may therefore properly require that they should not be put under an obligation to indemnify a third person by an act to which they do not agree.'

"The second right of which defendant would be deprived is that of dealing exclusively with the named insured, negotiating with them a settlement, and obtaining from them a release of its obligations under the policy,—all without the necessity of recognizing the alleged interest of any third persons of whom it had no knowledge and to whom it never intended to assume, and in fact did not assume, any obligation." *Spires v. Hanover Fire Insurance Company, supra.* (citations omitted) (footnote omitted) (emphasis in original)

Defendant relies heavily on *Spires* in presenting its arguments to this court. Defendant argues that to allow plaintiffs to recover the policy proceeds would violate the well-established rule, as set forth in *Spires,* that a fire insurance policy is a personal contract. However, we must look beyond *Spires* because plaintiffs contend that they are third party beneficiaries of the contract between defendant and Stargate.

In *Guy v. Liederbach,* 501 Pa. 47, 60, 459 A.2d 744, 751 (1983), our Supreme Court overruled "... *Spires* to the extent that it states the exclusive test for third party beneficiaries." More recently, in *Scarpitti v. Weborg,* 530 Pa. 366, 609 A.2d 147 (1992), the Pennsylvania Supreme Court set forth the analysis which we believe must be applied to the situation before us:

"The current rule in Pennsylvania for designation of a party as a third party beneficiary was first articulated in the seminal case of *Spires v. Hanover Fire Insurance*

*Co.,* 364 Pa. 52, 70 A.2d 828 (1950) (plurality opinion). In *Spires,* we held that in order for a third party beneficiary to have standing to recover on a contract, both contracting parties must have expressed an intention that the third party be a beneficiary, and that intention must have affirmatively appeared in the contract itself. *Spires v. Hanover Fire Insurance Co.,* 364 Pa. at 57, 70 A.2d at 830-31. But, in *Guy v. Liederbach,* 501 Pa. 47, 459 A.2d 744 (1983), we carved out an exception to the *Spires* rule, and allowed the beneficiary of a will to recover for legal malpractice against an attorney, despite the fact that the beneficiary was not in privity of contract with the attorney and was not named specifically as an intended beneficiary of the contract. In so doing, we adopted the Restatement (Second) of Contracts, §302 (1979), as a guide for analysis of third party beneficiary claims in Pennsylvania Restatement (Second) of Contracts, §302 (1979) states:

"Intended and Incidental Beneficiaries

"(1) Unless otherwise agreed between promisor and promisee, a beneficiary of a promise is an intended beneficiary if recognition of a right to performance in the beneficiary is appropriate to effectuate the intentions of the parties and either

"(a) the performance of the promise will satisfy an obligation of the promisee to pay money to the beneficiary; or

"(b) the circumstances indicate that the promisee intends to give the beneficiary the benefit of the promised performance.

"(2) An incidental beneficiary is a beneficiary who is not an intended beneficiary.

"Restatement (Second) of Contracts §302 (1979).

"Consequently, this court in *Guy* concluded:

"There is thus a two part test for determining whether one is an intended third party beneficiary: (1) the recognition of the beneficiary's right must be 'appropriate to effectuate the intention of the parties,' and (2) the performance must 'satisfy an obligation of the promisee to pay money to the beneficiary' or 'the circumstances indicate that the promisee intends to give the beneficiary the benefit of the promised performance.'

"*Guy v. Liederbach,* 501 Pa. at 60, 459 A.2d at 751.The first part of the test sets forth a standing requirement which leaves discretion with the court to determine whether recognition of third party beneficiary status would be appropriate. The second part defines the two types of claimants who may be intended as third party beneficiaries. If a party satisfies both parts of the test, a claim may be asserted under the contract. *Id.*" *Scarpitti v. Weborg, supra* at 370-371, 609 A.2d at 149-150.

The court in *Scarpitti* then went on to state that it never limited its holding in *Guy* to the facts of that case. Rather, the Supreme Court in *Guy* adopted the Restatement (Second) of Contracts §302 (1979) as the law of Pennsylvania.

"Accordingly, we hold that a party becomes a third party beneficiary only where both parties to the contract express an intention to benefit the third party in the contract itself, *Spires, supra, unless,* the circumstances are so compelling that recognition of the beneficiary's right is appropriate to effectuate the intention of the parties, and the performance satisfies an obligation of the promisee to pay money to the beneficiary or the circumstances indicate that the promisee intends to give the beneficiary the benefit of the promised performance. *Guy, supra.*" *Scarpitti v. Weborg, supra* at 372-373, 609 A.2d at 150-151. (emphasis in original)

We believe the instant case is one in which the circumstances are so *compelling* that recognition of plaintiffs' right is appropriate to effectuate the intention of the parties. The intention of both defendant and Stargate was to insure the real property against fire loss. To this end, defendant required a property and liability inspection as part of the procedure to insure the subject premises. Defendant was not interested in doing a records search or inspection to determine the record title owners. However, defendant could have canceled the policy if the inspection revealed the property to be an unacceptable risk.

Defendant argues that Stargate obtained the insurance policy to protect its (Stargate's) interests, whether legitimate or questionable, in the restaurant premises. In another portion of its brief, defendant states that "[t]he intent of [defendant] and Stargate was to exchange premiums for property and fire damage protection, with no eye toward benefiting the plaintiff owners." (Defendant's brief, p. 16.)

However, the record reveals the exact opposite. The circumstances of this case indicate that the promisee, Stargate, intended to give plaintiffs the benefit of the promised performance. As to the first policy Stargate took out, the Fireman's Fund policy, plaintiffs were listed as loss payees in two separate endorsements added to that policy. After the fire, Stargate entered into an agreement with plaintiffs by which Stargate would turn over to plaintiffs all insurance proceeds obtained by Stargate. The above is clear evidence of the intent of Stargate to have plaintiffs receive the benefit of the promised performance.

The record also shows that the policy issued by defendant was not canceled until July 27, 1982. (The fire occurred on April 11, 1982.) In canceling the policy,

defendant credited an amount to the account of Stargate. Clearly, defendant was retaining money for insurance services provided for covering the property.

An underwriter employed by defendant testified that the only reason to know the owner of a property is so that payment can be made to the appropriate person. This same underwriter also testified that ownership of the property does not impact upon the risk undertaken by defendant.

The following was taken from the deposition of Rudolf V. Innarelli, the underwriter:

"Q. Can you tell me whether the fact that the real estate is owned by someone other than the operator of the restaurant increased the risk that the insurance company faces?

"A. Do you mean if it's owned by someone else does it increase the risk?

"Q. Yes.

"A. No, it does not.

"Q. Would it increase the premium that would be charged for insurance if the owners were someone other than the operator of the restaurant?

"A. To the best of my knowledge I would say no if you are talking about now.

"Q. Yes.

"A. I don't know about then.

"Q. Is there any real reason why the insurance company wishes to know the identity of the owner?

"A. Yes, so that they are insured at the time of the loss and that they make payment to the appropriate party....

"Q. In this particular case, assuming the facts that we have told you—

"A. Yes.

"Q. —would it make any difference to the risk being insured, if Star Gate [sic] had on its application listed the Banks as the owners of the property?

"A. To the best of my knowledge I would say no.

"Q. And the reason being the fact that the Banks were the owners of the property did not place an additional risk on National Union; is that correct?

"A. Not as long as they were listed. If they were listed on the property under an endorsement showing that they were an additional insured or a loss payee there wouldn't be any problem.

"Q. And the reason they would be listed is so that National Union knew who to pay once a fire occurred?

"A. That's right.

"Q. There is absolutely no other reason other than to know who to pay; is that correct?

"A. To the best of my knowledge I would say no." (Notes of testimony, September 5, 1990, pp. 29, 33-34.)

Based on the above, we believe that the clear intention of both defendant and Stargate was to provide insurance for damage caused by fire to the subject property. The facts show that it was of no particular concern to defendant whether Stargate or some other person owned the property. Recognition of plaintiffs' right to collect the proceeds of the policy is the only appropriate way to effectuate the intention of the parties. Consequently, we conclude that plaintiffs are third party beneficiaries of the contract between defendant and Stargate and are entitled to summary judgment in their favor.

Due to the above finding, it is not necessary for this court to consider whether or not defendant had a duty to conduct a title search to verify ownership of the premises.

564

Accordingly, we enter the following order.

ORDER

And now September 5, 1993, upon consideration of the cross-motions for summary judgment filed by defendant and plaintiffs, it is hereby ordered and directed that plaintiffs' motion for summary judgment is granted. Judgment is entered in favor of plaintiffs and against defendant in the sum of $175,000.